John D. WEST, on behalf of himself and all other employees of Anne Arundel County Maryland similarly situated, et al; Marianne C. Anderson; Michael C. Andresky; Susan L. Bailey; Brian L. Bond; Charles W. Boyer; Richard A. Brock; Daniel Brown; Anthony W. Burke, Sr.; Tracy L. Burke; Guy Steven Childers; Kim J. Cissna; Riccardo Colella; Larry P. Collison; Michael Albert Connor; Michael E. Cox, Jr.; Timothy Crawford; Arnita Y. Dunham; Michele Delalla; Grafton G. Deitz, Jr.; James H. Edwards, Jr.; Mara L. Eicens; Wayne Eisenhardt; Karen Estepp; Douglas G. Fishel, Jr.; Terry A. Gero; James L. Glime; James E. Goetz; Jeffrey P.

Gormley; John Greene; Kathleen D. Grote; Russell Lloyd Harris; Sharon M. Henry; Michaez William Herz; Lisa A. Housand; Joseph M. Huber; William W. Isennock; Daniel L. Jarzynski; C. Edward Jett; Robert Frederick Johnson; Stephen E. Jones; Richard Allen Joy; Clifford C. Kooser, II; James David Kruger; Douglas P. Marshall; Michael J. Marsiglia; William L. Merson; Timothy L. Mikules; Michael Steven Moore, Jr.; Greg A. Novak; George L. Pfeffer, Jr.; Noldon Pope; Mark Steven Praschak; Patrick O. Prendergast; Carol Ann Rabinowitz; Cynthia E. Ray; Hurshel W. Shank, Jr.; Cecilia W. Sledgeski; Gregory Lee Smith, Iii; Randolph S. Spies; Thomas Stag; Peter G. Staley; Logan Starr, Sr.; Frank R. Stamm; David Sterling; Michael Swain; Keith D. Swindle; John Steven Thompson; Timothy Aldyn Tucker; Robert T. Vaccaro, Jr.; Robert Valderas; Marcus D. Wallace; William H. Ward; Khris Edwin Wildt; William Mark Wilhelm; David K. Williams; Raymond J. Schmidt; Kimberly S. Schneider; Michael Andrew Smith; John B. Wellman; Robert A. Harsh; Robert Anthony Mead; James Carroll Rostek, Sr.; Rand J. Lindgren; Raymond Gene Cullison, Jr.; Dawn Rodriguez; David R. Klinger; William H. Phillips; Bruce E. Fritz; Charles Edward Yetter; R. Thomas Crow, Ii; Debbie Schueler; William A. Cooper, Jr.; Steven K. Frye; Michael C. Huffman; Joseph M. Jordan; David James Geslois; Russell E. Davies, Jr.; Erick A. Esker; Donald Weigel; Ralph David Ritchie; Kenneth S. Banke; Jeannie Squillaci; Harry Joseph Joyave; Michael B. Ladd; William L. Bethea, III; John E. Lamb; Daniel T. Woolston; Patrick J. Carmody; Clarence Gerard Hayes; Brett J. Howe, Plaintiffs–Appellees,

United States of America, Intervenor,

v.

ANNE ARUNDEL COUNTY, MARYLAND, Defendant–Appellant,

City of Baltimore, Maryland, Amicus Curiae.

John D. WEST, on behalf of himself and all other employees of Anne Arundel County Maryland similarly situated, et al; Marianne C. Anderson; Michael C. Andresky; Susan L. Bailey; Brian L. Bond; Charles W. Boyer; Richard A. Brock; Daniel Brown; Anthony W. Burke, Sr.; Tracy L. Burke; Guy Steven Childers; Kim J. Cissna; Riccardo Colella; Larry P. Collison; Michael Albert Connor; Michael E. Cox, Jr.; Timothy Crawford; Arnita Y. Dunham; Michele Delalla; Grafton G. Deitz, Jr.; James H. Edwards, Jr.; Mara L. Eicens; Wayne Eisenhardt; Karen Estepp; Douglas G. Fishel, Jr.; Terry A. Gero; James L. Glime; James E. Goetz; Jeffrey P. Gormley; John Greene; Kathleen D. Grote; Russell Lloyd Harris; Sharon M. Henry; Michaez William Herz; Lisa A. Housand; Joseph M. Huber; William W. Isennock; Daniel L. Jarzynski; C. Edward Jett; Robert Frederick Johnson; Stephen E. Jones; Richard Allen Joy; Clifford C. Kooser, II; James David Kruger; Douglas P. Marshall; Michael J. Marsiglia; William L. Merson; Timothy L. Mikules; Michael Steven Moore, Jr.; Greg A. Novak; George L. Pfeffer, Jr.; Noldon Pope; Mark Steven Praschak; Patrick O. Prendergast; Carol Ann Rabinowitz; Cynthia E. Ray; Hurshel W. Shank, Jr.; Cecilia W. Sledgeski; Gregory Lee Smith, Iii; Randolph S. Spies; Thomas Stag; Peter G. Staley; Logan Starr, Sr.; Frank R. Stamm; David Sterling; Michael Swain; Keith D. Swindle; John Steven Thompson; Timothy Aldyn Tucker; Robert T. Vaccaro, Jr.; Robert Valderas; Marcus D. Wallace; William H. Ward; Khris Edwin Wildt; William Mark Wilhelm; David K. Williams; Raymond J. Schmidt; Kimberly S. Schneider; Michael Andrew Smith; John B. Wellman; Robert A. Harsh; Robert Anthony Mead; James Carroll Rostek, Sr.; Rand J. Lindgren; Raymond Gene Cullison, Jr.; Dawn Rodriguez; David R. Klinger; William H. Phillips; Bruce E. Fritz;

Charles Edward Yetter; R. Thomas Crow, II; Debbie Schueler; William A. Cooper, Jr.; Steven K. Frye; Michael C. Huffman; Joseph M. Jordan; David James Geslois; Russell E. Davies, Jr.; Erick A. Esker; Donald Weigel; Ralph David Ritchie; Kenneth S. Banke; Jeannie Squillaci; Harry Joseph Joyave; Michael B. Ladd; William L. Bethea, III; John E. Lamb; Daniel T. Woolston; Patrick J. Carmody; Clarence Gerard Hayes; Brett J. Howe, Plaintiffs–Appellants,

United States of America, Intervenor,

v.

ANNE ARUNDEL COUNTY, MARYLAND, Defendant–Appellee,

City of Baltimore, Maryland, Amicus Curiae.

Nos. 96–1251, 96–1280.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 1, 1997.

Decided Feb. 18, 1998.

**ARGUED**: Gail Thuman Watson, Assistant County Attorney, Anne Arundel County Office of Law, Annapolis, MD, for Appellant. John D. Maddox, Arter & Hadden, Washington, DC, for Amicus Curiae. Francis Joseph Collins, Kahn, Smith & Collins, P.A., Baltimore, MD, for Appellees. Stephanie Robin Marcus, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, for Intervenor. **ON BRIEF**: David A. Plymyer, Deputy County Attorney, Anne Arundel County Office of Law, Annapolis, MD, for Appellant. Thomas H. Odom, Terri L. Bowman, Arter & Hadden, Washington, DC; Otho M. Thompson, City Solicitor, James S. Ruckle, Jr., Associate City Solicitor, Baltimore City Law Department, Baltimore, MD, for Amicus Curiae. Joel A. Smith, Andrew H. Kahn, Kahn, Smith & Collins, P.A., Baltimore, MD; Laurence Gold, Washington, DC, for Appellees. Frank W. Hunger, Assistant Attorney General, Lynne Ann Battaglia, United States Attorney, Mark B. Stern, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, for Intervenor.

Before WILKINSON, Chief Judge, HAMILTON, Circuit Judge, and NORTON, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed in part and reversed in part by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge HAMILTON and Judge NORTON joined.

### OPINION

WILKINSON, Chief Judge:

Following the Supreme Court's decision in *Printz v. United States*, — U.S. —, 117

S.Ct. 2365, 138 L.Ed.2d 914 (1997), this court requested supplemental briefing on the following question: "In light of the Supreme Court's decision in *Printz v. United States,* —— U.S. ——, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), whether the Fair Labor Standards Act may be constitutionally applied to the salary determinations at issue in this case." The parties briefed and argued the constitutionality of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.,* as applied to state and local governments. Anne Arundel County argued vigorously that the present Supreme Court would hold the FLSA violative of the Tenth Amendment as it applies to state and local government employees. Our task, however, is not to predict what the Supreme Court might do but rather to follow what it has done. In light of *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), we must uphold the constitutionality of applying the FLSA to Anne Arundel County in this case.

With respect to the merits of plaintiffs' FLSA claims, we affirm in part and reverse in part the judgment of the district court.

## I.

John West and his fellow plaintiffs are current or former employees of the Anne Arundel County Fire Department. They are known as Emergency Medical Technicians, or EMTs. Between 1987 and 1995, each was assigned to the Fire Department's Emergency Medical Services (EMS) Division in the job classification of Firefighter/ Emergency Medical Technician–Ambulance, Firefighter/Cardiac Rescue Technician, or Firefighter/Emergency Medical Technician-Paramedic.

Like all County firefighters, the EMTs completed a twenty-one-week Fire Academy, which included training in all aspects of the Department's emergency service work—firefighting, emergency medical services, rescue, and hazardous materials operations. Once they were assigned to the EMS Division, plaintiffs worked the same shift schedule and

were integrated into the same command structure as other firefighters. When responding to a call, however, EMTs were generally prohibited from active participation in fire suppression in order to keep clean for their medical duties.

The employment relationship between the Fire Department and all firefighters, including EMS personnel, was governed by the same union contract. Firefighters and EMTs were compensated for overtime hours according to the partial exemption for fire protection and law enforcement employees in section 7(k) of the FLSA, 29 U.S.C. § 207(k), rather than the general forty-hour standard set forth in section 7(a) of the FLSA, 29 U.S.C. § 207(a).

Plaintiff EMTs filed suit challenging their classification as fire protection employees and seeking lost overtime pay, liquidated damages, prejudgment interest, and attorney's fees. The district court granted plaintiffs summary judgment, finding that they did not fall under the section 7(k) exemption. The court rejected the County's argument that plaintiffs who had been Captains, Field Lieutenants, Training Lieutenants, or Paramedics were exempt from overtime requirements as "bona fide executive, administrative, or professional" personnel. *See* 29 U.S.C. § 213(a)(1). And the court denied the County's defense of good faith under 29 U.S.C. § 259(a). Plaintiffs were awarded prejudgment interest but no liquidated damages, and the court applied a two-year statute of limitations to their claims. Both parties appeal.[1]

## II.

### A.

In this case we are asked to apply the FLSA to a subdivision of state government. For some years following the Supreme Court's decision in *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (subjecting a local government to the FLSA), such application was constitutionally uncontroverted. In a recent line of cases culminat-

---

**1.** The County does not appeal the district court's decision with respect to Paramedics.

ing in *Printz v. United States,* —— U.S. ——, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), however, the Supreme Court has imposed limits, either through the Commerce Clause or the Tenth and Eleventh Amendments, on the power of Congress to enact legislation that affects state and local governments. *See, e.g., United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (Commerce Clause); *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (Tenth Amendment) (*New York II*); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (Eleventh Amendment). In view of the strong commitment to state sovereignty evidenced in this series of cases, this court ordered supplemental briefing and heard argument from the parties on the question whether the FLSA could constitutionally be applied to determine wages and working conditions for critical components of the state and local workforce.

■ The County, joined by amicus City of Baltimore, advances three main arguments against applying the FLSA to state governmental entities.[2] First, the County contends that state governments should be able to set the wages and working conditions of their own employees. Even if one does not accept this broad and bright-line formulation, however, the County reads *Printz* to prohibit federal regulation of any activity of state government that can be said to be a core governmental function. Any definition of core governmental function, argues the County, would, at a minimum, include the emergency public safety services provided by the Fire Department. According to the County, *Printz* breathed new life into the principle of federalism underlying the Tenth Amendment and revived the "traditional governmental function" analysis employed before *Garcia* in *National League of Cities v. Usery,* 426 U.S. 833, 852, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976). The County thus interprets *Printz* to invalidate congressional

enactments like the FLSA that "compromise the structural framework of dual sovereignty" by regulating a quintessential government function such as firefighting, no matter what form the law takes—whether it explicitly "direct[s] the functioning" of state governments or is a "law of general applicability" the incidental application of which "excessively interfere[s] with the functioning of state governments." *See Printz,* —— U.S. at ——, 117 S.Ct. at 2383.

The County also equates the 1974 FLSA Amendments with the Brady Handgun Violence Prevention Act invalidated in *Printz.* Both laws are said impermissibly to "commandeer" or "conscript" state government processes by forcing them to conform to and serve a federal mandate. *See, e.g., id.* at ——, 117 S.Ct. at 2381; *New York II,* 505 U.S. at 175, 178, 112 S.Ct at 2429–30. The relevant provisions of the 1974 Amendments targeted only state governmental entities; thus, says the County, the Amendments constitute direct regulation of states as states. The County further contends that the financial burden of compliance with the FLSA would require a wholesale restructuring and/or reduction of the services provided by the Fire Department. The arcane and impenetrable nature of FLSA regulations, says the County, only adds to the level of federal intrusiveness. By thus dictating the organization and operation of a local fire department, the County claims the FLSA effectively directs the functioning of this governmental unit and transgresses *Printz*'s ban on federal conscription of state governments.

Finally, the County deems the FLSA unconstitutional even if it is seen as a law of general applicability that regulates states only incidentally. According to the County's interpretation of *Printz,* the constitutionality of such laws turns on a "balancing test" like that in *Fry v. United States,* 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975), *National League of Cities,* 426 U.S. 833, 96

---

**2.** Hereafter we will use the word "state" to include local governments. For purposes of determining whether a governmental entity is protected by constitutional guarantees of federalism, including the Tenth Amendment, the law does not distinguish between states and their political

subdivisions. That "distinction is peculiar to the question of whether a governmental entity is entitled to Eleventh Amendment sovereign immunity." *Printz,* —— U.S. at —— n. 15, 117 S.Ct. at 2382 n. 15 (citation omitted).

S.Ct. 2465, 49 L.Ed.2d 245 (1976), and *South Carolina v. Baker*, 485 U.S. 505, 108 S.Ct. 1355, 99 L.Ed.2d 592 (1988), which weighs the seriousness of the problem addressed by the federal law against the effect on state sovereignty of compliance with it. The County concludes that the FLSA is unconstitutional as applied to the Fire Department because it fails this test. According to the County, the FLSA aims to remedy substandard labor conditions and encourage the spread of employment. The County sees these objectives as meaningless in the context of the Fire Department, where employees are adequately represented by a union and the amount of employment is controlled by a "tax-cap" limit on supply and unpredictable demand that is indexed to the rate of accidents. Weighed against the uncertain or negligible benefit of regulation, the County claims that the serious impact of FLSA compliance on the structure and size of the Fire Department constitutes excessive interference with state sovereignty.

Plaintiffs, joined by the United States as intervenor, insist that the FLSA may constitutionally be applied in this case. They deride the County's proposed "traditional governmental function" analysis as unworkable. The Supreme Court unanimously abandoned a similar "untenable" standard in the area of intergovernmental tax immunity. *See New York v. United States*, 326 U.S. 572, 583, 66 S.Ct. 310, 314–15, 90 L.Ed. 326 (1946) (opinion of Frankfurter, J., joined by Rutledge, J.); *id.* at 586, 66 S.Ct. at 316 (Stone, C.J., concurring, joined by Reed, Murphy, and Burton, JJ.); *id.* at 590–96, 66 S.Ct. at 318–21 (Doug las, J., dissenting, joined by Black, J.) (*New York I*). And plaintiffs point out that as recently as last term the Court refused to grant immunity from suit under 42 U.S.C. § 1983 for private sector employees performing a "governmental" function on grounds that "a purely functional approach bristles with difficulty, particularly since, in many areas, government and private industry may engage in fundamentally similar activities." *Richardson v. McKnight*, — U.S. ——, ——, 117 S.Ct. 2100, 2106, 138 L.Ed.2d 540 (1997). Thus, even in light of *Printz*, plaintiffs see no reason to expect the Supreme Court to depart from its conclusion in

*Garcia* "that the attempt to draw the boundaries of state regulatory immunity in terms of 'traditional governmental function' is not only unworkable but is also inconsistent with established principles of federalism." 469 U.S. at 531, 105 S.Ct. at 1007.

Plaintiffs also dispute the County's attempt to locate the 1974 FLSA Amendments in the line of Tenth Amendment cases concerning federal laws that commandeer state government. Plaintiffs argue that the 1974 Amendments simply do not fit the category of conscriptive legislation. First, they point out that cases in this line of authority have considered federal laws that impress state officials to enact or administer a federally-conceived regulatory program. *See, e.g., Printz*, — U.S. at —— – ——, 117 S.Ct. at 2380–84 (invalidating background check obligation imposed by Brady Act on state law enforcement personnel because it impermissibly "dragooned" them "into administering federal law") (citation omitted); *New York II*, 505 U.S. at 162, 112 S.Ct. at 2421 (invalidating congressional attempt "to require the States to govern according to Congress' instructions"). Plaintiffs maintain that the FLSA does not come close to having this effect. They deny that the FLSA actually regulates the structure or functioning of the Fire Department, insisting that the FLSA allows the Department to reach whatever salary and scheduling arrangement for EMTs and firefighters it wants, within broad statutory parameters. Plaintiffs thus conclude that, because the County remains free to structure the provision of fire and rescue services however it sees fit, the County government has not in fact been "commandeered."

Rather, according to plaintiffs, the 1974 Amendments are part of a conceptually distinct category: laws of general applicability that incidentally apply to state governments. Plaintiffs insist that *Printz* had no effect on such general regulation, noting that in *Printz*, as it had in *New York II*, the Supreme Court consciously maintained the long-standing distinction between general legislation that incidentally affects states and targeted legislation that conscripts the processes of state government. *Printz*, — U.S. at ——, 117 S.Ct. at 2383; *New York*

*II,* 505 U.S. at 160–61, 112 S.Ct. at 2420 ("[T]his is not a case in which Congress has subjected a State to the same legislation applicable to private parties. This litigation instead concerns the circumstances under which Congress may use the States as implements of regulation; that is, whether Congress may direct or otherwise motivate the States to regulate in a particular field or a particular way.") (citations omitted). Plaintiffs point to *Garcia* as the controlling authority in the former line of cases, where the Supreme Court explicitly approved applying the FLSA to a governmental entity despite federalism objections. *See* 469 U.S. at 555–56, 105 S.Ct. at 1019–20. Further, plaintiffs contend that, to the extent *Printz* mandates a balancing test to determine the constitutionality of applying such general regulation to states, *Garcia* has already struck the balance with respect to the FLSA and deemed it a permissible regulation of state employment.

### B.

■ The parties have thus ably joined issue on the critical constitutional issue in this case. Their respective contentions demonstrate two things: (1) that the Court in *Printz* has generally stressed the importance of the Tenth Amendment in our constitutional system; and (2) that neither *Printz* nor any other Supreme Court case has specifically overruled *Garcia.* In the end, therefore, we conclude both that *Garcia* controls the disposition of that issue and that any decision to revisit *Garcia* is not ours to make. In a case decided the same term as *Printz,* the Supreme Court did not move to reconsider *Garcia* and enforced the FLSA against a local government agency without addressing the constitutional question. *Auer v. Robbins,* 519 U.S. 452, ——, 117 S.Ct. 905, 909, 137 L.Ed.2d 79 (1997). Lower federal courts have repeatedly been warned about the impropriety of preemptively overturning Supreme Court precedent. *E.g., Agostini v. Felton,* —— U.S. ——, ——, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997). The Supreme Court's direction has been crystal clear: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the

Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989). That apparently is the situation here: *Garcia* is specifically on point; *Printz*'s contrary intimations are only generally instructive. We thus conclude on the authority of *Garcia* that the application of the FLSA to the Anne Arundel County Fire Department presents no constitutional defect.

### III.

■ We next turn to the merits of the parties' FLSA claims. Section 7(a) of the FLSA mandates overtime compensation at a rate of one and one-half times the regular hourly rate for every hour worked in excess of forty per workweek. 29 U.S.C. § 207(a). Section 7(k) outlines a special overtime system for employees of public agencies engaged in fire protection or law enforcement activities. As construed by the Department of Labor, this section mandates that time-and-a-half be paid to fire protection workers for every hour worked in excess of fifty-three per workweek. 29 U.S.C. § 207(k); 29 C.F.R. § 553.230. The County claims that plaintiffs engage in "fire protection activities" and thus fit within the section 7(k) exemption from the FLSA's overtime requirements. Like the district court, we disagree.

The County relies on the regulatory definition of "fire protection activities," which "include[s] rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities." 29 C.F.R. § 553.210. The County asserts that plaintiffs are such "an integral part" of the Department's fire protection activities: EMTs function together with firefighters in a unified command structure, receive fire academy training, share union representation with firefighters, work at the same facilities and towards a common goal with firefighters, and operate under a system of corresponding to all calls the Department receives.

The County, however, has not shown that EMTs' activities integrally relate to the Fire Department's fire protection activities. Further, we agree with plaintiffs that 29 C.F.R. § 553.212(a) directs the conclusion that EMTs are not employees engaged in "fire protection activities." This regulation plainly imposes an across-the-board limitation on the amount of non-fire-fighting work that employees may perform and still qualify as fire protection employees under 29 U.S.C. § 207(k):

> Employees engaged in fire protection or law enforcement activities as described in §§ 553.210 and 553.211, may also engage in some nonexempt work which is not performed as an incident to or in conjunction with their fire protection or law enforcement activities.... The performance of such nonexempt work will not defeat either the section 13(b)(20) or 7(k) exemptions unless it exceeds 20 percent of the total hours worked by that employee during the workweek or applicable work period. *A person who spends more than 20 percent of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection or law enforcement activities for purposes of this part.*

29 C.F.R. § 553.212 (emphasis added). Plaintiffs do not qualify as fire protection employees because they exceed this twenty percent limit. EMTs perform mostly medical services and work related to medical services. As such, they are medical personnel rather than firefighters. In an affidavit, the named plaintiff, John West, indicates that his job typically consists of

> preparing for medical emergencies, traveling to medical emergencies, stocking the ambulance or emergency medical vehicle, administering first aid and other medical care in emergency medical situations, transporting patients to hospitals, cleaning and maintaining the ambulance and station, attending training sessions, studying emergency medical procedures and waiting to be called on emergency medical calls.

The record shows that, during the period at issue in this lawsuit, at least eighty percent of the Fire Department's calls required only emergency medical services and did not involve fire suppression at all. Medical services which are not rendered at the scene of any fire do not qualify as exempt activities. *Id.* (exempt work must be "performed as an incident to or in conjunction with" fire protection activities); *see also id.* § 553.210(a)(4) (defining fire protection activities as those activities "directly concerned" with "the prevention, control or extinguishment of fires"). Moreover, when the Fire Department did respond to a fire call, EMTs were prohibited by standard operating procedure from engaging in fire suppression activities. In light of this evidence that plaintiff EMTs generally did not—and could not—fight fires, it cannot be said that "fire protection activities" comprised more than eighty percent of their work. Thus, we find that the County violated the FLSA when it subjected plaintiffs to the special overtime standard for fire protection employees.

### IV.

Next we turn to the County's claim that plaintiffs ranked as Captains or Lieutenants are exempt from overtime as employees "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). FLSA section 13(a) indicates that the statute's overtime provisions "shall not apply" to such employees. *Id.* § 213(a). It is clear that all plaintiffs were paid more than $250.00 each week, so we apply the regulatory "short test" to the County's submissions. *See* 29 C.F.R. §§ 541.1 & 541.2.

### A.

▪ First, the County claims that plaintiffs employed in the positions of EMS Captain–Operations, EMS Captain–Training Coordinator, and EMS Captain–Duty Officer ("Captains") are not entitled to overtime pay because they qualify as executives.[3] In order to fit this exemption, an employee must be "compensated on a salary basis," and most of his duties must involve management. *Id.*

---

**3.** Throughout this litigation Captains have been treated as a group, and neither party attempts to draw any meaningful distinction between them with respect to their duties or salary status.

§ 541.1(f). We agree with the County that Captains satisfy both the salary test and the duties test for the executive exemption.

An individual is employed on a salary basis "if under his employment agreement he regularly receives each pay period ... a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." *Id.* § 541.118(a). Plaintiffs receive a minimum predetermined amount every two weeks, plus additional compensation in the form of overtime. They are paid for 50 hours of work each week, even if they only work 48 hours. Plaintiffs thus appear to be employed on a salary basis. Additional compensation does not alter the status of salaried employees, *id.* § 541.118(b), so the receipt of overtime does not defeat the salary basis of plaintiffs' employment. *York v. City of Wichita Falls*, 944 F.2d 236, 242 (5th Cir. 1991); *Hartman v. Arlington Cty.*, 720 F.Supp. 1227 (E.D.Va.1989), *aff'd on reasoning of lower court*, 903 F.2d 290 (4th Cir. 1990).

Plaintiffs claim that Captains are "subject to" two reductions in pay that defeat salary basis: reductions for minor disciplinary infractions and reductions for partial-day absences. FLSA regulations provide that "[p]enalties imposed in good faith for infractions of safety rules of major significance will not affect the employee's salaried status," implying that reductions in pay for lesser disciplinary violations do defeat the salary basis of employment. 29 C.F.R. § 541.118(a)(5); *accord Auer*, 519 U.S. at ——, 117 S.Ct. at 909; *Shockley v. City of Newport News*, 997 F.2d 18, 24–25 (4th Cir. 1993). And under regulations in effect during the period in question in this case, reductions in pay for absences of less than a day would defeat salary basis.[4] *See* 57 Fed.Reg. 37,666 (1992); *Shockley*, 997 F.2d at 22. Plaintiffs aver that all Fire Department employees are subject to these impermissible

deductions and conclude from this assertion that all plaintiffs, including Captains, are not salaried. The County responds with the testimony of Stephen Halford, Deputy Chief of Administration for the Fire Department, that there has been no occasion when a Captain has actually suffered such a deduction.

At the time of trial, the courts of appeals were divided on the question of whether merely being subject to impermissible reductions, even if a deduction is never exacted, defeats salary basis. *Compare, e.g., Kinney v. District of Columbia*, 994 F.2d 6, 11 (D.C.Cir.1993) (holding that if an employee's pay can theoretically be docked, that employee is "subject to deduction" within the meaning of 29 C.F.R. § 541.118(a) and thus is not salaried), *with, e.g., Atlanta Professional Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 805 (11th Cir.1991) (holding that employee loses salaried status only if their pay is actually docked). However, during the pendency of this appeal, the Supreme Court resolved this circuit split. *See Auer*, 519 U.S. at —— ——, 117 S.Ct. at 910–11. The Supreme Court interpreted the FLSA regulations to mean that employees lose salaried status if they "are covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter.' " *Id.* at ——, 117 S.Ct. at 911 (quoting Secretary of Labor's brief as amicus curiae). "That standard is met ... if there is either [1] an actual practice of making such deductions or [2] an employment policy that creates a 'significant likelihood' of such deductions." *Id.*

Because "an appellate court must apply the law in effect at the time it renders its decision," *Thorpe v. Housing Auth. of Durham*, 393 U.S. 268, 281, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969), we use the standard adopted in *Auer.* In light of the evidence that no Captain has ever suffered a deduction in pay for either a minor disciplinary infraction or a partial-day absence, the first condition is not satisfied—the Fire Department clearly

---

**4.** We note that "[t]he Department of Labor created an exception to this principle on September 6, 1991, when it promulgated 29 C.F.R. § 541.5d.... Therefore, to the extent that [County] policy in fact required such reduc-

tions, the policy only affects whether [Captains] were paid on a salary basis prior to September 6, 1991." *Shockley*, 997 F.2d at 22 (citations and footnote omitted).

has no "actual practice" of such deductions. And the Supreme Court's reasoning in *Auer* shows that the second condition is also not met here. Because the disciplinary policy at issue in *Auer* governed all employees alike, salaried and nonsalaried, it did not "effectively communicate" a "significant likelihood" of disciplinary pay deductions for salaried employees. 519 U.S. at ——, 117 S.Ct. at 911. Likewise in the instant case, plaintiffs themselves assert that Lieutenants and Captains "are subject to the same disciplinary rules and regulations and are subject to the same potential disciplinary measures" as other employees. Thus, as in *Auer*, this general policy does not defeat salary basis. *Id.; accord Stanley v. City of Tracy*, 120 F.3d 179, 184 (9th Cir.1997); *Balgowan v. New Jersey*, 115 F.3d 214, 219 (3d Cir.1997).

█ FLSA regulations also require that the "primary duty" of an executive (1) consist of "the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof," and (2) "includes the customary and regular direction of the work of two or more other employees therein." 29 C.F.R. § 541.1(f). We agree with the district court that Captains meet these requirements. "As a 'rule of thumb,'" for tasks to constitute an employee's primary duty, "the employee must devote more than fifty percent of his time to these duties." *Shockley*, 997 F.2d at 26; *see also* 29 C.F.R. §§ 541.103 & 541.206(b). The district court's conclusion that "Captains spend almost all of their time managing personnel, evaluating personnel performance, attending management meetings, performing administrative tasks in regard to management, handling sick leave, managing the distribution of equipment, and instructing subordinates" is amply supported by the descriptions of the Captains' positions in the record. And in performing their jobs, Captains customarily supervise either one fire station or an entire shift of officers. A station or a shift constitutes a recognized department or subdivision of the Fire Department and is comprised of many more than the regulatory minimum of "two or more other employees." Thus, we find that all Captains qualify for the executive exemption from overtime pay.

### B.

█ The County further claims that Field Lieutenants are exempt from overtime as executives. We agree. All employees of the Fire Department are subject to the same generally applicable policy of deductions, and there is no evidence that any impermissible deductions have actually been exacted from any Lieutenant's salary. Thus, applying the reasoning of *Auer*, we conclude that, like Captains, Field Lieutenants are paid on a salary basis.

Turning to the duties component of the executive exemption, we hold that the primary duty of Field Lieutenants is management of a recognized department or subdivision of the Fire Department and that they customarily and regularly direct the work of two or more employees. *See* 29 C.F.R. § 541.1(f). Field Lieutenants manage and direct the operations of all shifts of an EMS company, which, as noted above, constitute recognized subdivisions of the Fire Department. Field Lieutenants devote the majority of their time to management: they coordinate and implement EMS training programs at the company level; maintain company payroll and personnel leave records; enforce departmental rules and regulations; ensure operational readiness through supervision and inspection of personnel, equipment, and quarters; evaluate and test subordinates; and report and make recommendations on equipment and procedures. During the course of these activities, they supervise the work of two or more employees.

█ This evidence of Field Lieutenants' management responsibilities notwithstanding, the district court concluded that Field Lieutenants are best classified as "working foremen" under 29 C.F.R. § 541.115, rather than exempt executives, because they supervise EMS operations in the field. We disagree. Here, as in *Shockley*, the Field Lieutenants' responsibilities extend beyond mere field supervision "to the evaluation of the subordinates and to the management of both the people and equipment assigned to their units." 997 F.2d at 27. Under *Shockley*,

therefore, the working foreman concept does not apply.

## C.

■ The County seeks the benefit of the exemption for administrative employees for plaintiffs employed as EMS Training Lieutenants. Training Lieutenants meet the criteria for this exemption. As with Captains and Field Lieutenants, Training Lieutenants are paid on a salary basis as that term is interpreted in *Auer.* The administrative duties test is satisfied if (1) the employee's primary duty consists of "office or nonmanual work directly related to management policies or general business operations of his employer," 29 C.F.R. § 541.2(a)(1), and (2) this duty "includes work requiring the exercise of discretion and independent judgment," *id.* § 541.2(e)(2). The district court found that

> the EMS Training Lieutenant develops, coordinates, implements and conducts EMS training programs. The Lieutenant also prepares lesson plans and training aids, supervises delivery of training and tests and evaluates new equipment. It is further undisputed that the EMS Training Lieutenant spends more than 50 percent of his time on administrative duties.

The district court properly concluded that Training Lieutenants' duties "are directly related to the operation of the EMS [D]ivision" and are "essential to the management of the Fire Department." Thus, the primary duties of Training Lieutenants are indisputably "office or nonmanual work directly related to management policies or general business operations" of the Fire Department. *See* 29 C.F.R. §§ 541.2 & 541.206(b).

Nonetheless, the district court declined to apply the administrative exemption from overtime to Training Lieutenants, finding that there was insufficient evidence that these employees' responsibilities include "work requiring the exercise of discretion and independent judgment." *See* 29 C.F.R. § 541.2(e)(2). We disagree. The regulations indicate that "the exercise of discretion and independent judgment involves the com-

parison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). It is apparent that the primary tasks of Training Lieutenants necessitate the exercise of precisely such judgment and discretion. These primary tasks include not only developing and coordinating all EMS training programs but also administering tests and evaluating new equipment. The fact that some recommendations made by Training Lieutenants are subject to review by superior officers is no bar to application of the administrative exemption. 29 C.F.R. § 541.207(e)(1). Therefore, we find that Training Lieutenants satisfy the criteria for the administrative exemption from overtime.

## V.

■ As the record contains no evidence that the County's failure to properly administer its overtime pay system stemmed from wilful noncompliance with the FLSA, we affirm the district court's decision to apply a two-year rather than a three-year statute of limitations to plaintiffs' claims, and we uphold as well the trial court's refusal to award liquidated damages. At the same time, the County's noncompliance with the FLSA does not entitle it to invoke the defense of good faith conformity provided in the Portal–to–Portal Act, 29 U.S.C. § 259(a).[5] As the district court noted, the Department of Labor Letter Ruling that the County says supports its treatment of EMTs provides no basis for determining whether the County's situation is similar to the employer to whom the letter was addressed. And, as the district court also noted, "there is no evidence whatsoever that the County acted in reliance on any of the letter rulings cited."

## VI.

We reverse the district court with respect to Captains, Field Lieutenants, and Training Lieutenants, finding that they satisfy both the salary test and the duties tests for the exemption from overtime for executive and administrative personnel. In all other re-

**5.** We also affirm the district court's award of prejudgment interest to plaintiffs.

spects, we affirm the judgment of the district court. We remand this case for further proceedings consistent with this opinion.

*AFFIRMED IN PART, REVERSED IN PART.*