# Equitable Life Assurance Society of the United States v. Bailey.

(Decided January 22, 1926.)

## Appeal from Graves Circuit Court.

1. Insurance—Pleadings Held Not to Create Issue of Suicide but Existence of Facts Relied upon in Avoidance of Suicide.—In action on life policy for death of insured who committed suicide, which policy did not cover, pleadings explicitly conceding that insured committed suicide, and pleading state of case in avoidance of suicide, created, not the issue of suicide, but the existence of facts relied upon in avoidance of suicide.

2. Appeal and Error—Giving Plaintiff Beneficiary Burden on Issue of Existence of Facts Relied Upon in Avoidance of Suicide which Policy did Not Cover Held Not Prejudicial Error.—In action on life policy for death of insured who committed suicide which policy did not cover, where plaintiff in anticipation of defense of suicide raised the issue as to the existence of facts relied upon in avoidance of suicide, giving plaintiff the burden on that issue held not prejudicial error, where, in the customary course of pleading, the burden on that issue would have devolved upon plaintiff.

3. Insurance—Evidence Held to Justify Submission of Issue Whether Insured was so Insane at Time of His Self-Destruction that he Could Not Understand Nature of Act.—Evidence in action on insurance policy not covering suicide, held to justify submission of issue as to whether insured, who committed suicide by drinking carbolic acid, was so insane at the time as not to be able to understand the nature of the act causing his destruction or that it would cause his death or injure him.

LEO T. WOLFORD, WILLIAM MARSHALL BULLITT, and BRUCE, BULLITT, GORDON & LAURENT for appellant.

HOLIFIELD, GARDNER & McDONALD for appellee.

Opinion of the Court by Turner, Commissioner— Affirming.

In October, 1920, appellant insured the life of O. W. Bailey, and issued to him two combined life and accident policies aggregating $10,000.00 on the ordinary life plan, with the additional agreement that in case of his death caused solely by accident it would be double that amount, or $20,000.00. Bailey's wife, the appellee, was named beneficiary in these policies.

On the 30th of December, 1920, O. W. Bailey destroyed his life by taking carbolic acid, and shortly there-

after the beneficiary instituted action on the two policies and sought a judgment against the appellant for $20,00.00, embracing not only the $10,000.00 ordinary life insurance but the double liability provided for. On the trial she recovered a judgment for the full amount of $20,000.00, and appellant appealed from the same, which was reversed. Equitable Life Assurance Society v. Bailey, 203 Ky 339. In that opinion the reversal was upon the grounds (1) that the evidence of the widow and beneficiary as to the condition of the decedent's mind just before taking the carbolic acid was incompetent, and (2) that there could be no recovery under the double liability clause in the policies because of the provision therein that the agreement to pay the same in the event of death from bodily injury did not cover self-destruction, sane or insane, "or death resulting, directly or indirectly, from bodily or mental infirmity." The court in addition expressly left open in the opinion the question whether the court had erred in refusing to give a peremptory instruction for defendant.

The petition of the plaintiff declares upon the ordinary life provisions of the two policies aggregating $10,000.00, and in addition sets up the provisions therein wherein the double liability is imposed in the event of the insured's death solely through external, violent and accidental means, and then alleges that Bailey lost his life on account of bodily injuries sustained by him from such means, the same being caused by Bailey accidentally taking carbolic acid, and then alleges that he took the acid at a time when he was so insane and his mind so unbalanced and his reason so impaired that he was unconscious that he was taking his own life or attempting to do so, and did not at the time understand the nature or the character of the act he was committing, or that the same would cause his death or injure him.

These things were put in issue by the defendant, and the first trial resulted as above stated.

It is apparent, therefore, that the opinion on the first appeal, after having eliminated recovery on the double liability clause, and declined to pass upon appellant's right to a directed verdict, left open for another trial only the question whether there could be a recovery by the plaintiff on the ordinary life provisions of the policies.

It stood admitted in the pleadings that Bailey had taken his own life, and there was a provision in the policy

that self-destruction, sane or insane, within one year from the date of the policy, was a risk not assumed by the insurer, and therefore under the state of the pleadings after the former opinion there was no issue left except whether Bailey was at the time of self-destruction so insane that he did not understand the nature or the character of the act he was committing, or that it would cause his death or injure him. Under a long line of decisions, which are not called in question upon this appeal, it is held that in such circumstances there may be a recovery upon a life policy notwithstanding the provision in the contract attempting to protect the insurer from death by self-destruction.

Conforming, therefore, to the former opinion, the trial court upon the second trial only submitted this issue, and there was upon that trial a verdict for the plaintiff for $10,000.00, and the defendant again appeals.

Before the last trial the defendant tendered an amended answer wherein it undertook to withdraw all the denials in its original answer raising the issue as to the decedent's state of mind at the time of his self-destruction, and the court declined to permit this to be done. Clearly the purpose of this was to permit the defendant to assume the burden on that issue, and thereby give it the right to the concluding argument before the jury, and the contention is earnestly made that in an action on a life policy where the only defense is suicide the burden is on the defendant, and that the court erred in not giving it the burden. The fundamental error in this contention is that the only issue left after the former reversal was not the issue of suicide, for in fact there was no such issue. The pleading explicitly conceded that decedent had taken his own life, and expressly pleaded a state of case in avoidance of that fact. So that instead of the single issue of self-destruction, the single issue was the existence of the facts relied upon in avoidance thereof.

Likewise counsel is plainly in error in the contention that the court erred in giving the plaintiff the burden on that issue. It is true that the issue was raised by the plaintiff in her pleading in anticipation of such a defense, but if she had not and the pleadings had been prepared in the customary way the burden would still have been upon the plaintiff. If she had merely filed

her action and set up the policy and the fact that her husband was dead, she would have presented a *prima facie* case; then if defendant had relied upon that clause it would have presented an affirmative defense; then when the plaintiff in her reply had set up the facts alleged in the petition relative to his state of mind at the time of his suicide, she would have had the affirmative on that final issue, which was in fact the only issue, as is clearly indicated in the former opinion.

It is apparent, therefore, that there was no prejudicial error in the refusal either to permit the defendant to file its amendment, or in granting the burden of proof to the plaintiff.

The former opinion of this court left it wholly unnecessary for any election as to which cause of action set up in the plaintiff's petition should be prosecuted; for of the two causes relied upon one of them was expressly eliminated by the opinion, and the other expressly left open.

This leaves for our consideration only the single question of whether under the evidence the court should have given a directed verdict for the defendant, there being no complaint of the instruction given.

There are four phases of the evidence bearing upon the state of mind of the decedent at the time of his self-destruction: (a) his heredity, (b) his conduct before his death, (c) an accidental injury received in a fall a short time before his death, and (d) the opinion of experts based upon hypothetical questions.

As to hereditary insanity the plaintiff's evidence showed that decedent's maternal grandmother was insane and died an inmate of the state institution at Hopkinsville. It likewise showed that his mother suffered from maniac depressive insanity and died in the Hopkinsville asylum. It likewise showed that his maternal uncle committed suicide by shooting himself, and that decedent likewise had a paternal uncle who was insane and committed suicide by drinking carbolic acid, and a cousin who had been confined in an insane asylum, and another cousin who was insane, and in addition a second cousin now confined in a Missouri asylum.

With this pathetic history we have in addition the fact that decedent himself was throughout his life a frail and exceedingly nervous man; that he was subject for

several years before his death to fits of deep depression, and at times had a wild and unnatural expression in his eyes, and that he was not regarded as a normal person; that at the times he had these spells of gloom and depression he appeared to be in a sort of stupor, and had an unnatural glassy look in his eyes; that when under the influence of these spells he would not appear to understand or know what he was doing, and that many of his neighbors and friends did not regard him as a normal man, even several years before he died. In addition to this the evidence shows that a short time before his death he fell off of his house on to some concrete work several feet below, and received severe bruises; and from that time on his mental condition appeared to be much worse, and to have rapidly deteriorated. And then we have the evidence of two well-known experts, each of whom had spent several years at the Hopkinsville asylum in the special study of mental diseases. One of them had known the decedent in his early life, and expressed the view that even some years before his death his mind was affected, and they each testified in response to a hypothetical question based upon the family history, the conduct and the life of the decedent, his action immediately before the suicide as detailed by the members of his family, and others, and the accident which he had received some ten days or two weeks before his death, and each expressed the view that based upon such facts the man was suffering from maniac depressive insanity, and in its acute stages would not have known what he did or its effect.

Although the decedent left a note to his wife and family which would indicate that he did have mind enough to understand the nature of the act he was about to commit, yet in the light of this tragic family history, these spells of excessive depression, his strange conduct and looks at times, it cannot be said that there was not sufficient evidence to submit the issue and uphold the verdict.

There being no complaint of the form of the instruction, and the only issue having heretofore been outlined by this court, and the evidence seeming to justify the verdict, we are of opinion that the parties had a fair trial.

Judgment affirmed.

RESPONSE TO PETITION FOR REHEARING.

PER CURIAM. The petition for rehearing is based primarily upon the complaint that the court erred in holding in the opinion that appellant on the last trial was not entitled to the burden of proof.

The facts are that in plaintiff's original petition, after quoting the provision about self-destruction, sane or insane, she alleges that decedent's death was caused by his accidentally taking carbolic acid, and that at the time he took same

> "he was so insane and his mind so unbalanced and his reason so impaired that he was unconscious he was taking his own life or attempting to do so; that he did not understand the nature or character of the act he was committing or that said act would cause his death or injure him."

Thus the plaintiff admitted the self-destruction, but relied upon the quoted facts in avoidance of it.

Thereupon defendant, without taking any steps to change the burden on this issue, promptly filed its answer, wherein it denies in the language of the petition that decedent came to his death by accidentally taking carbolic acid, or that he was at the time insane, etc., as set forth in the petition.

This made at the outset of the action, without complaint by defendant, an issue upon the mental condition of the decedent at the time he took the carbolic acid, and obviously left the burden upon that issue with the plaintiff, and so far as we gather from the old transcript on file, no complaint was ever raised on that subject until after the reversal of the judgment by this court.

But upon the return of the case after the reversal, and upon the second trial, the defendant, with a view of changing the burden on this issue so as to give it the concluding argument, sought to withdraw that part of its original answer making that issue, and to file an amended answer making the same issue and no other, but presenting it in a different form so as to raise the question in a way that would then entitle the defendant to assume the burden. In other words, defendant, after waiving at the outset the plaintiff's assumption of the burden on that issue, attempts upon the second trial to

so change the form of its pleadings, without changing the issue, as to give it the burden which it had previously acquiesced in giving to the plaintiff.

The trial court in the exercise of a sound discretion declined to permit this to be done at that stage of the proceedings, and we see no reason to interfere with the exercise of that discretion.

This action has been tried by two juries, and so far as this appeal is concerned, the same result reached each time. Upon each trial the vital issue of fact was the same, and after defendant has waived its right to object to the plaintiff's assumption of the burden, it was too late for it to raise this question on the second trial.

The petition for rehearing is overruled.