**CITY OF LOUISVILLE, DIVISION OF FIRE, Appellant,**

v.

**FIRE SERVICE MANAGERS ASSOCIATION By and Through its President, Matthew L. KAELIN, and Matthew L. Kaelin, individually, Appellees.**

No. 2004–SC–0443–DG.

Supreme Court of Kentucky.

Nov. 22, 2006.

Rehearing Denied Feb. 22, 2007.

Edwin S. Hopson, Mitzi D. Wyrick, Lisa Catherine Dejaco, Wyatt, Tarrant & Combs, Citizens Plaza, Louisville, Counsel for Appellant.

Kenneth L. Sales, Paul Jason Kelley, Sales, Tillman, Wallbaum, Catlett & Satterley, Louisville, Counsel for Appellees.

Opinion of the Court by Justice GRAVES.

Matthew L. Kaelin is a District Chief in the Division of Fire for the City of Louisville and the president of the Fire Service Managers Association ("FSMA"). The District Chiefs—an unincorporated association—are members of the FSMA. Kaelin and the FSMA (collectively "FSMA") filed a claim with the Kentucky Labor Cabinet

("Cabinet") against the City of Louisville's Division of Fire for reimbursement of time-and-a-half overtime pay that the District Chiefs allege was unlawfully withheld in contravention of KRS 337.285. On May 4, 2001, the Cabinet made tentative findings of fact which conclude that the District Chiefs were supervisory, salaried personnel who were not illegally denied time-and-a-half overtime pay in contravention of KRS 337.285. The FSMA appealed, but on May 16, 2002, the Cabinet affirmed its tentative findings of fact in a final order.

Pursuant to KRS 13B.140, the FSMA appealed the Cabinet's final order to the Jefferson Circuit Court, but on March 7, 2003, after briefing by both sides, the Jefferson Circuit Court affirmed the Cabinet's actions in all respects. The District Chiefs again appealed, and the Court of Appeals reversed, finding the District Chiefs were entitled to the enhanced overtime pay provided under KRS 337.285. Because we agree with both the Cabinet and the Jefferson Circuit Court that the District Chiefs are supervisory, salaried personnel not entitled to overtime pay under KRS 337.285, we reverse the decision of the Court of Appeals and reinstate the decision of the Jefferson Circuit Court.

## I. Facts

■ The Cabinet's factual findings are entitled to deference absent a showing that they are clearly erroneous. *Ky. Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Ky., Inc.*, 91 S.W.3d 575, 578 (Ky.2002). As neither party has presented evidence to compel a conclusion to the contrary, we accept and adopt the Cabinet's factual findings. According to the factual findings made by the Cabinet, the FSMA is comprised of District Chiefs in the fire department. District Chiefs carry the rank of major; and as stipulated by the parties, all constitute supervisory

personnel. District Chiefs work one of two schedules, a 40–hour week comprised of five 8–hour shifts or a 56–hour work week comprised of alternating 48 and 72–hour weeks that include either two or three 24–hour shifts. Each District Chief is paid a salary regardless of whether he or she works a 40– or 56–hour schedule. Whenever a District Chief works time in excess of the regularly scheduled hours, compensatory time is awarded on an hour-per-hour basis. However, if overtime is earned while responding to a fire, overtime is paid at a straight rate based on the District Chief's hourly rate of pay, the calculation of which takes into account the number of hours per week he or she is normally scheduled.

When District Chiefs must miss time from their scheduled work, they are required to obtain approval to use sick leave, annual leave, or compensatory time. Furthermore, District Chiefs are allowed to trade shifts with other District Chiefs. Shift trading must be approved by supervisors. District Chiefs on 40–hour–per-week schedules may trade shifts with those on 56–hour–per–week schedules. A District Chief who fails to report for duty under a shift trade will be considered AWOL.[1] If the regularly assigned District Chief cannot then cover the shift, he may be off payroll,[2] although use of vacation time may be permitted. (Standard Operating Procedures 103.14) [hereinafter "SOP"].

## II. Analysis

The statutes at issue in this case are contained in KRS Chapter 337, Kentucky's analogue to the Fair Labor Standards Act, 29 U.S.C. §§ 201–219. Under KRS 337.285, an "employee" must be paid at a rate of time-and-a-half for any hour worked over forty during a workweek. FSMA contends that the District Chiefs are "employees" under this statute, and thus, are entitled to the time-and-a-half overtime pay set forth therein.

"Employee" as used in KRS 337.285 is defined as follows:

> (a) "Employee" is any person employed by or suffered or permitted to work for an employer, *but shall not include:*
>
> . . . .
>
> 2. *Any individual employed in a bona fide executive, administrative, supervisory, or professional capacity . . . as the terms are defined by administrative regulations of the executive director . . . .*

KRS 337.010(2) (emphasis added). 803 KAR 1:070 is the administrative regulation of the executive director which defines the terms set forth above, and in 2002[3] it stated as follows:

> Section 4. The term *"individual employed in a bona fide supervisory capacity" [as used in KRS 337.010(2)(a)(2) ] shall mean any employee:*
>
> (1) Who customarily and regularly directs the work of two (2) or more employees where he is employed;
>
> (2) Who does not devote more than twenty (20) percent of his hours of work in the workweek to activities of the same nature as the employees under his supervision; and

1. AWOL is an acronym for "Absent With Out Leave."

2. It is unclear whether "off payroll" means that a District Chief would be docked pay for an absence from a traded shift, or simply that he or she would be deemed absent. Regardless, there has been no evidence that a District Chief has actually been docked pay in the event of an absence from a traded shift.

3. This section was amended in 2005 and is now found at 803 KAR 1:070(10). The amendments do not affect the analysis of the issue in the case *sub judice.*

(3) *Who is compensated for his services on a salary basis* at a rate of not less than $155 per week, exclusive of board, lodging, or other facilities; provided, that an employee who is compensated on a salary basis at a rate of not less than $250 per week, exclusive of board, lodging, or other facilities, and whose primary duty consists of customarily and regularly directing the work of two (2) or more other employees, shall be deemed to meet all of the requirements of this section.

. . . .

(Emphasis added).

The parties concede that if the District Chiefs satisfy the three requirements of Section 4 set forth above, they cannot be classified as "employees" pursuant to KRS 337.285 and thus, are not entitled to the time-and-a-half overtime pay set forth therein. It is further conceded that the District Chiefs are supervisory to the extent that they satisfy the first two requirements of that regulation. *See Kaelin v. City of Louisville,* No.2003–CA–000740–MR, 2004 WL 1046372, slip op. at 4 (May 7, 2004). Thus, the determinative issue for our consideration is whether the District Chiefs satisfy the third and final requirement of 803 KAR 1:070(4) (2002).

The third and final requirement of 803 KAR 1:070(4) (2002) is whether the District Chiefs are compensated "on a salary basis." The term "on a salary basis" is defined within the administrative regulations as follows:

Section 7. Salary Basis. (1) An employee will be considered to be paid "on a salary basis" within the meaning of this administrative regulation if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, *which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any work week in which he performs no work.*

(a) An employee will not be considered to be "on a salary basis" if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. Accordingly, if the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

(b) Deductions may be made, however, when the employee absents himself from work *for a day or more* for personal reasons, other than sickness or accident. Thus, if an employee is absent for a day or longer to handle personal affairs, his salaried status will not be affected if deductions are made from his salary for such absences.

(c) Deductions may also be made for absences of a day or more occasioned by sickness or disability, if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability . . . .

803 KAR 1:070(7) (2002) (emphasis added). For the reasons set forth herein, our interpretation of this regulation leads us to conclude that the District Chiefs are paid "on a salary basis" and thus cannot be classified as "employees" pursuant to KRS 337.285. Accordingly, we reverse the Court of Appeals and reinstate the ruling of the Jefferson Circuit Court.

### A. Burden of Proof.

Initially, we must address a dispute between the parties concerning who bears the burden of establishing whether the District Chiefs are entitled to time-and-a-half overtime pay pursuant to KRS 337.285. As this case involves the review of an administrative decision, we look to KRS 13B.090(7), which reads in part as follows:

> In all administrative hearings, unless otherwise provided by statute or federal law, *the party proposing the agency take action or grant a benefit has the burden to show the propriety of the agency action or entitlement to the benefit sought.* The agency has the burden to show the propriety of a penalty imposed or the removal of a benefit previously granted. *The party asserting an affirmative defense has the burden to establish that defense.* The party with the burden of proof on any issue has the burden of going forward and the ultimate burden of persuasion as to that issue. The ultimate burden of persuasion in all administrative hearings is met by a preponderance of evidence in the record. Failure to meet the burden of proof is grounds for a recommended order from the hearing officer.

(Emphasis added.)

■ The Cabinet interprets KRS 13B.090(7) as imposing the burden on the FSMA—"the party proposing the agency take action" under KRS 13B.090(7). *See Fire Serv. Managers Assoc. v. City of Louisville,* No. 01–LABC–0369, slip op. at 6 (Labor Cab. Feb. 4, 2002). The FSMA asserts that excluding any personnel from receiving time-and-a-half overtime pay pursuant to KRS 337.285 constitutes an affirmative defense, and thus, the burden of establishing one's exclusion from the requirements of KRS 337.285 is on the City. Upon review, we agree with the City that a proper interpretation of KRS 13B.090(7), in conjunction with KRS 337.285, places the burden in this case on the FSMA as "the party proposing the agency take action or grant a benefit." KRS 13B.090(7).

■ An affirmative defense need not be pled until a plaintiff first presents a *prima facie* case. *Whittaker v. Hardin,* 32 S.W.3d 497, 499 (Ky.2000); *Equity Life Assurance Soc'y of U.S. v. Bailey,* 214 Ky. 754, 284 S.W. 403, 404 (1926). "The party having the burden of proof before an administrative agency must sustain that burden, and *it is not necessary for an agency to show the negative of an issue when a prima facie case as to the positive has not been established.*" *Pers. Bd. v. Heck,* 725 S.W.2d 13, 17 (Ky.App.1986) (emphasis added).

■ When a party initiates a claim before the Cabinet for entitlement to overtime pay under KRS 337.285, proof that a claimant is an "employee" pursuant to that statute is part of his or her *prima facie* case. Thus, the negative of that issue, that a claimant is *not* an "employee," is not, as the FSMA argues, an affirmative defense for which the City bears the burden of proof. *Cf. Gordon v. NKC Hospitals, Inc.,* 887 S.W.2d 360, 362–63 (Ky. 1994) (exclusivity of liability provision under the Workers' Compensation statute amounts to affirmative defense); *Curry v. Cincinnati Equitable Ins. Co.,* 834 S.W.2d 701, 703–704 (Ky.App.1992) (ERISA preemption amounts to affirmative defense).[4]

---

4. To support its argument, the FSMA cites to cases involving exclusive remedy provisions and federal statutory preemption. However, these cases are clearly distinguishable because the employers in those cases are defending against an otherwise valid claim. Conversely, a showing that a claimant is an "employee" under KRS 337.285 is an element of the claim itself. To argue that the burden

■ The Court of Appeals cited *Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974), in support of its holding that "the employer bears the burden of showing that the employee is exempt from overtime pay requirements." *Kaelin v. City of Louisville,* No.2003–CA–000740–MR, 2004 WL 1046372, slip op. at 11 (May 7, 2004). However, *Corning Glass Works v. Brennan* interpreted the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219. Under the FLSA, all employees are automatically entitled to time-and-a-half overtime pay unless those employees fall under a specified "exemption." 29 U.S.C. § 207(a)(1). One of these specified exemptions under the FLSA is "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1) ("Exemptions"). In contrast, individuals who are employed in a bona fide supervisory capacity are not "employees" at all under KRS 337.285, and thus, are completely excluded from the statute's scope.

This distinct structural difference between the FLSA and KRS 337.285 renders the federal case law cited by the Court of Appeals inapposite.[5] Likewise, federal cases relied upon by the FSMA that require an "exemption" be narrowly construed against the employer are similarly inapplicable here, since the drafting of KRS 337.010(2)(a) to exclude bona fide supervisory employees from its scope does not constitute an exemption. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Mitchell v. Ky. Fin. Co.,* 359 U.S. 290, 295–

96, 79 S.Ct. 756, 759–60, 3 L.Ed.2d 815 (1959). Accordingly, the Cabinet properly allocated the burden of proof to the FSMA, and the Court of Appeals' holding to the contrary was in error.

### B. Salary Basis Test.

■ Having concluded that the FSMA bears the burden of establishing that the District Chiefs are "employees" under KRS 337.285, we now turn to the merits of the City's appeal. We first look to Kentucky jurisprudence and find nothing other than the statutes themselves to aid in interpreting the issue which is presented before us today. In the absence of any Kentucky cases on point, we next look to federal cases interpreting the FLSA. Although the cases that allocate the burden of proof under the FLSA are not applicable under KRS Chapter 337 for that point, the substantive provisions of the FLSA, and specifically the salary basis test for bona fide executive employees, are substantially similar to those in KRS Chapter 337 and the relevant administrative regulations. Accordingly, we look to the federal cases for guidance as the analysis contained therein involving the salary basis test is relevant and pertinent to our review.

■ In beginning our analysis, we first must adopt a standard for determining whether the salary basis test has been met in any particular case. Under federal caselaw, while consideration of employment policy is important, actual practice, i.e. application of that policy, is of heightened importance when making such a de-

---

falls on the City to prove that a claimant is not in a bona fide supervisory capacity under KRS 337.285 essentially amounts to an argument that all individuals are presumed to be "employees" under KRS 337.285 unless such presumption is rebutted by the employer. We find no indication whatsoever that the General Assembly intended such a presumption.

5. *See, e.g., Brennan,* 417 U.S. at 196–97, 94 S.Ct. at 2229; *Douglas v. Argo–Tech Corp.,* 113 F.3d 67, 70 (6th Cir.1997); *Belcher v. Shoney's, Inc.,* 30 F.Supp.2d 1010, 1018 (M.D.Tenn.1998). *See also* cases cited in the Brief for the Appellee, at 8 n. 8.

termination. Yet, the Court of Appeals held to the contrary, finding that the "actual application" of policy was not particularly relevant when determining whether the District Chiefs had satisfied the salary basis test. *Kaelin v. City of Louisville,* No.2003–CA–000740–MR, 2004 WL 1046372, slip op. at 14 (May 7, 2004). In *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), the United States Supreme Court determined that actual practice was of seminal importance, and adopted the following standard:

> [T]he salary-basis test den[ies] exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay "as a practical matter." That standard is met ... if there is either an actual practice of making such deductions or an employment policy that creates a "significant likelihood" of such deductions.

*Auer,* 519 U.S. at 461, 117 S.Ct. at 911. This approach has since been uniformly followed by the federal circuits. *See, e.g.,* 246 F.3d 776, 780 (6th Cir.2001); *West v. Anne Arundel County,* 137 F.3d 752, 762–63 (4th Cir.1998); *Stanley v. City of Tracy,* 120 F.3d 179, 183–84 (9th Cir.1997); *Belcher v. Shoney's, Inc.,* 30 F.Supp.2d 1010, 1018–19 (M.D.Tenn.1998); *DiGiore v. Ryan,* 987 F.Supp. 1045, 1054 (N.D.Ill. 1997).

We agree with the federal courts that a less wooden standard should be adopted when interpreting whether the salary basis test has been met in any particular case. Accordingly, we reject the Court of Appeals' view that actual application of employment policy is irrelevant when determining whether the salary basis test has been met and adopt the standard set forth in *Auer* above.

With the *Auer* standard in mind, we next review the pertinent facts in this case in light of the applicable statutory language. 803 KAR 1:070(7) (2002) defines being compensated "on a salary basis," in pertinent part, as regularly receiving a "predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." *Id.* However, "if an employee is absent for a day or longer to handle personal affairs, his salaried status will not be affected if deductions are made from his salary for such absences." *Id.*

Pursuant to the Cabinet's findings, the City did not have a written policy of making deductions in pay for absences of less than a full day.[6] We also find no evidence indicating that there was any unwritten policy to this effect.

In actual practice, the Court of Appeals found the following facts to be relevant to whether the District Chiefs satisfied the "on a salary basis" test: (1) they were required to work scheduled shifts, amounting to a certain number of hours per week; (2) they were permitted to trade shifts with each other, and trading shifts is on an hour-for-hour basis; furthermore, the person initially assigned the shift was responsible for an absence if the person who

---

6. There was a disagreement before the Cabinet regarding which official Fire Department Rules and Regulations ("Rules") were in effect at the relevant time. Rule 1207, among the disputed rules, stated: "No member of the Division of Fire shall be absent from duty, except in the case of sickness or injury, without leave granted by proper authority. No member... can be paid for time absent from duty." The Cabinet found that Rule 1207 was not in effect. The Court of Appeals found the Cabinet's finding in this regard to be supported by substantial evidence and therefore, conclusive. *Ky. Unemployment Ins. Com'n v. Landmark Cmty. Newspapers of Ky., Inc.,* 91 S.W.3d 575, 578 (Ky.2002). We affirm the Court of Appeals on this point and thus, do not consider this particular Rule for the purposes of this opinion.

subsequently agreed to cover the shift failed to report for the shift; (3) when the time changes twice annually, their pay is reduced or increased by one hour, according to the time change; (4) they were required to complete time sheets documenting hours worked each week; (5) they were required to get approval to use vacation or compensatory time in order to take time off work; (6) they were permitted to accrue overtime in the form of compensatory time; and (7) in one instance a District Chief, Major Ott, was disciplined for an unrelated administrative violation by the loss of two vacation days.

When these facts are reviewed in light of the statutory language and the pertinent caselaw, we do not believe they are sufficient to meet the FSMA's burden of proving that the District Chiefs are "employees" under KRS 337.285. Moreover, we hold that the Labor Cabinet's and the Jefferson Circuit Court's ruling that the District Chiefs are paid "on a salary basis" as the term was defined in 803 KAR 1:070(7) (2002) is supported by substantial evidence in the record.

The fact that District Chiefs are required to work scheduled shifts does not deprive them of their status as salaried employees. Employer control of employee work schedules "play[s] no part in defining salaried employees." *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 516 (6th Cir. 2004). *See also Klein v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 990 F.2d 279, 284 (7th Cir.1993) ("Of course, when a nurse is assigned a particular shift, she cannot simply arrive at work or leave whenever it pleases her; she must necessarily be there when her assigned shift begins and ends."). Indeed, the necessity of imposing and enforcing scheduled shifts is especially critical in the emergency response fields, where it is imperative that firefighters and related administrators be on hand at all times.

The ability of District Chiefs to accrue overtime for every hour worked in excess of their regularly scheduled shifts is also irrelevant to their status as salaried employees. "The [Department of Labor] has unequivocally and consistently declared that additional compensation in the form of hourly overtime payment does not defeat exempt status under the salary-basis test." *Boykin v. Boeing Co.*, 128 F.3d 1279, 1281 (9th Cir.1997). "Additional compensation does not alter the status of salaried employees, so the receipt of overtime does not defeat the salary basis of plaintiffs' employment." *West v. Anne Arundel County*, 137 F.3d 752, 762 (4th Cir.1998). *See also Spradling v. City of Tulsa*, 95 F.3d 1492, 1500 (10th Cir.1996); *York v. City of Wichita Falls*, 944 F.2d 236, 242 (5th Cir.1991); *Caperci v. Rite Aid Corp.*, 43 F.Supp.2d 83, 95 (D.Mass.1999); *Aiken v. County of Hampton*, 977 F.Supp. 390, 397 (D.S.C.1997); *Aaron v. City of Wichita*, 54 F.3d 652, 658 (10th Cir. 1995).

Additionally, the City's requirement that District Chiefs maintain timesheets is not inconsistent with a finding that they are salaried employees. *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 400 (6th Cir.2004) (salary-basis test satisfied even though employee was required to account for forty hours worked each week on timesheet). This measure is justified by both the practicality of ensuring that the District Chiefs are paid for any time worked over the scheduled amount, *Aaron*, 54 F.3d at 658, and the necessity of public accountability accompanying any government-funded service organization. *Aiken v. County of Hampton, South Carolina*, 977 F.Supp. 390, 397 (D.S.C.1997); *Kuchinskas v. Broward County*, 840 F.Supp. 1548, 1556 (S.D.Fla.1993).

As for the requirement that the District Chiefs get approval for using vacation time or compensatory time in order to

take time off work for personal reasons, such a requirement is both practical and necessary to ensure efficient institutional functioning especially with a municipal government body where accountability is needed. *See Kuchinskas*, 840 F.Supp. at 1556 (policy requiring employees to obtain approved leave is "premised on the concept of public accountability" which is "not inconsistent with the FLSA" and "do[es] not negate Plaintiffs' status as 'salary based' employees"). No good reason compels this Court to interpret the salary basis test to require that an employer permit its employees to absent themselves from work for personal reasons without prior permission so long as they had accrued some form of leave time. The salary basis test is concerned with the basis of compensation for an employee and not the absolute freedom granted to an employee to determine his or her own schedule.

■ We next address the City's policy that allowed District Chiefs to trade shifts with each other.[7] The City's Standard Operating Procedure Rule 103.14 states in pertinent part:

A member failing to report for duty on an authorized trade will be considered A.W.O.L. If the member who was regu-

larly assigned to work cannot be reached or another member cannot work the trade, the regularly assigned member will be absent (off the payroll). Consideration may be given for use of vacation time.

The effect of SOP 103.14 is that a District Chief will be considered absent without excuse if the person with whom the trade was made fails to cover the shift as agreed. Although such language could arguably designate a policy of reducing a District Chief's pay for absence of a day or less, such isolated and ambiguous language falls far from establishing "an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Auer*, 519 U.S. at 460–61, 117 S.Ct. at 910–11. In fact, nonenforcement of an existing policy may actually support an employer's claim that its employees are salaried. *See Balgowan v. New Jersey*, 115 F.3d 214, 219 (3d Cir. 1997) ("Furthermore, the DOT's nonenforcement of its disciplinary policy and the fact that no engineer has ever suffered a reduction in pay under the policy, provide even stronger evidence that the DOT's disciplinary policy is not one under which

---

7. We note in passing the City's argument that 803 KAR 1:063, explicitly pertaining to, *inter alia*, KRS 337.285, forecloses any consideration of shift trading or the effect it has on an employee's status as salaried. However, this interpretation is not persuasive. 803 KAR 1:063 states:

Section 1. A common practice or agreement among employees engaged in fire protection activities ... is that of substituting for one another on regularly scheduled tours of duty (or for some part thereof) in order to permit an employee to absent himself or herself from work to attend to purely personal pursuits. This practice is commonly referred to as "trading time."

Section 2. *The practice of "trading time" will be deemed to have no effect on hours of work if the following criteria are met:*

(1) The trading of time is done voluntarily by the employees participating in the program and not at the behest of the employer;

(2) The reason for trading time is due, not to the employer's business operations, but to the employee's desire or need to attend to personal matters; and

(3) A record is maintained by the employer of all time traded by his employees. (Emphasis added.) The language "will be deemed to have no effect on hours of work" is intended to protect the practice of shift trading by salaried employees and not to warrant any method of discipline by an employer for shift trading gone awry.

there is a 'significant likelihood' of deductions.").

As for the bi-annual decrease or increase by one hour of the District Chiefs' pay to account for time changes, "a daylight savings policy is not dispositive...." *Quirk v. Baltimore County, Md.*, 895 F.Supp. 773, 781 n. 2 (D.Md.1995). Furthermore, for District Chiefs who have been employed a complete fiscal year, the effect of this policy is that they will suffer no deduction in pay.

The final remaining fact that the Court of Appeals considered in holding that the District Chiefs were "employees" pursuant to KRS 337.285 was a single administrative disciplinary incident where a District Chief, Major Ott, agreed to surrender two days of accrued vacation leave. The Court of Appeals considered this occurrence to be "irrefutable evidence that District Chiefs are treated as hourly, not salaried, employees," *Kaelin v. City of Louisville*, No.2003–CA–000740–MR, 2004 WL 1046372, slip op. at 12–13 (May 7, 2004), reasoning that "the loss of annual time is effectively a reduction in pay because annual time has an actual dollar value." *Id.* at 14.

However, the great majority of cases hold that reductions in a salaried employee's accrued vacation or compensatory leave does not constitute a reduction in "pay" for purposes of the salary basis test.[8] The Sixth Circuit is in the majority of this trend:

> Although the planners concede that they receive at least $250 per week, they argue that they cannot be exempt even though salaried because AEP requires them to account for at least 40 hours of

work each week and to make up for partial-day absence either by working extra hours or by taking vacation time or paid time off. *An employer may require exempt salaried employees to make up for time missed from work due to personal business. It is only when an employer actually deducts from an employee's paycheck that the employee is ineligible for the exemption.*

*Renfro v. Indiana Michigan Power Co.*, 370 F.3d 512, 516 (6th Cir.2004) (emphasis added). *See also Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 265 (5th Cir. 2000) ("There is no support in the case law for the proposition that requiring salaried employees to make up time missed from work due to personal business is inappropriate. Although the salary basis regulation prohibits deductions from an employee's salary for personal absences of less than a day, the regulation does not prohibit an employer from requiring an employee to make up the time he misses."); *Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 400 (6th Cir.2004) ("Exempt status, however, is only affected by monetary deductions for work absences and not by non-monetary deductions from fringe benefits such as personal or sick time."); *Barner v. City of Novato*, 17 F.3d 1256, 1261–62 (9th Cir.1994) ("We conclude that 'amount' refers to 'cash' or 'salary.' Thus, a reduction in the paid leave time does not affect the Plaintiffs' status as salaried employees."); *McDonnell v. City of Omaha*, 999 F.2d 293, 298 (8th Cir.1993), *overruled on other grounds by Auer*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *Caperci v. Rite Aid Corp.*, 43 F.Supp.2d 83, 94 (D.Mass.1999); *Cruz v. McAllister*

---

8. This position is also squarely supported by two separate opinion letters by the United States Department of Labor. "[A]n employer can require an employee to substitute paid leave for such absences without losing the exemption for that week." Admin. Letter

Rulings: Dept. of Labor, Wage and Hour Div., Jul. 17, 1987. Moreover, "Deductions may be made from an employee's *future leave accrual* for absences of less than a full day...." Admin. Letter Rulings: Dept. of Labor, Wage and Hour Div., Nov. 30, 1994.

*Bros., Inc.,* 52 F.Supp.2d 269, 290 (D.P.R. 1999); *Cooke v. Gen. Dynamics Corp.,* 993 F.Supp. 50, 53–55 (D.Conn.1997); *Aiken v. County of Hampton,* 977 F.Supp. 390, 397 (D.S.C.1997); *Kuchinskas v. Broward County,* 840 F.Supp. 1548, 1555 (S.D.Fla. 1993); *Int'l Ass'n of Fire Fighters v. City of Alexandria,* 720 F.Supp. 1230, 1232 (E.D.Va.1989).[9] Thus, the incident involving Major Ott is insufficient to support the FSMA's claim that the District Chiefs are subject to deductions in pay for variations in the quality or quantity of work performed.

When the record is reviewed in its entirety, we find substantial evidence to support the conclusion that the District Chiefs are paid "on a salary basis" as that term was defined in 803 KAR 1:070(4) (2002). The District Chiefs are, therefore, supervisory, salaried personnel not entitled to time-and-a-half overtime pay under KRS 337.285.

The judgment of the Court of Appeals is reversed, and the judgments of the Labor Cabinet and the Jefferson Circuit Court are reinstated.

LAMBERT, C.J., GRAVES, MINTON, and ROACH, J.J. concur.

WINTERSHEIMER, J., dissents in a separate opinion in which McANULTY and SCOTT, J.J., join.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the Court of Appeals was correct when it required the City to prove that the district chiefs are salaried employees and consequently exempt from the overtime provisions of KRS 337.285. The practice of the City of reducing the compensation of the district chiefs based on the quantity of work is prohibited because it is clearly inconsistent with salaried status. KRS 337.010(2)(a)(2). The district chiefs are hourly employees and entitled to overtime pursuant to the statute.

The overwhelming evidence clearly demonstrates that the City pays the district chiefs based on the number of hours they work, rather than the so-called value of their work. Everything they do must be accounted for on an hourly basis. The evidence indicates that the City pays the district chiefs in the same fashion that it compensates line firefighters and a review of this case further illustrates that the City has failed to present evidence to the contrary. The opinion of the Court of Appeals should be affirmed.

McANULTY and SCOTT, JJ., join.

9. Several of the cases relied upon by the FSMA involve actual monetary deductions from an employee's paycheck for each scheduled hour of work missed, and are therefore inapposite. *See, e.g., Spradling v. City of Tulsa,* 95 F.3d 1492, 1500–01 (10th Cir.1996); *Mueller v. Reich,* 54 F.3d 438, 440 (7th Cir. 1995), *vacated on other grounds by Wisconsin v. Mueller,* 519 U.S. 1144, 117 S.Ct. 1077, 137 L.Ed.2d 212 (1997); *Donovan v. Carls Drug Co.,* 703 F.2d 650, 652 (2d Cir.1983).