RENDERED:  SEPTEMBER 3, 2021, 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1457-MR

MARION HUGHES; JAMES A.
CRUME; PHILLIP L. WESTERN;
RAYMOND S. BATTS; AND TERRI
A. ROGERS                                                                    APPELLANTS


                          APPEAL FROM JEFFERSON CIRCUIT COURT
v.                        HONORABLE MITCH PERRY, JUDGE
                          ACTION NO. 07-CI-009996


UPS SUPPLY CHAIN SOLUTIONS,
INC.; UNITED PARCEL SERVICE,
INC.; AND DEFENDANTS JOHN
DOE 1-10                                                                      APPELLEES


                                    OPINION
                                    AFFIRMING

                              ** ** ** ** **

BEFORE:  JONES, LAMBERT, AND L. THOMPSON, JUDGES.

LAMBERT, JUDGE:  Marion Hughes, Raymond S. Batts, James A. Crume, Terri

A. Rogers, and Phillip L. Western, As Lead Plaintiffs for the Class (hereinafter

"the Class") have appealed from the April 26, 2019, order of the Jefferson Circuit

Court granting the motion by UPS Supply Chain Solutions, Inc., and UPS, Inc. (hereinafter "UPS"), for a judgment on the pleadings and dismissing the Unpaid Wages class claim. We affirm.

This claim has been before the Court on three earlier appeals, albeit related to class certification. For the factual and procedural history underpinning the present appeal, we shall rely upon the applicable portions of our prior opinion in the third appeal, *UPS Supply Chain Sols., Inc. v. Hughes*, No. 2014-CA-001496-ME, 2018 WL 3602262 (Ky. App. Jul. 27, 2018):

> Kentucky's Wages and Hours Act, Kentucky Revised Statutes (KRS) Chapter 337, allows a plaintiff who is not compensated by his or her employer for performing tasks which are compensable to recover payment for the time spent performing such tasks – along with liquidated damages and attorney's fees. KRS 337.385. In 2007, the appellees filed a putative class action against UPS. In their complaint, they alleged that they and other employees of UPS were required to enter workplace facilities through mandatory security checkpoints before clocking in and to exit through the security checkpoints after clocking out each day. The appellees alleged that they were not paid wages for time spent at the security checkpoints and that UPS violated Kentucky's Wages and Hours Act by failing to compensate employees for work time. The appellees filed a motion for class certification. The proposed class was defined as consisting of all nonexempt UPS employees employed in the Commonwealth during the applicable limitations period.
>
> . . . .

By order entered July 27, 2012, the circuit court denied the purported class representatives' motion for class certification. They filed a notice of appeal.

Thereafter, the purported class representatives filed a motion to amend, seeking to certify a more limited class. The new putative class was defined as all nonexempt UPS employees who worked at the following locations: Elizabethtown, Louisville, Technical & Logistics Center, and Worldport during the applicable limitations period.

By opinion and order entered October 9, 2012, the circuit court concluded that the more limited class also failed to meet the prerequisites and conditions of the rules of procedure governing class actions. Consequently, the court declined to certify the limited class. A second notice of appeal was filed. The appeals were consolidated by an order of this Court entered on November 27, 2012.

In an unpublished opinion rendered on September 6, 2013, this Court held that the circuit court had not erred by denying class certification in its order concerning the more broadly defined class. An affidavit of a UPS Security Director indicated that employees at two UPS facilities in Kentucky were not required to pass through mandatory security checkpoints yet were included in the proposed class. Since employees at these UPS facilities had not suffered an injury common to other putative class members, we concluded that class certification was improper. We affirmed the circuit court's opinion and order with respect to that appeal.

With respect to the more limited putative class, we concluded that the circuit court had erred by concluding that two prerequisites of [Kentucky Rules of Civil Procedure (CR)] 23.01 (commonality and typicality) of class certification had not been met. From our review of the record, we concluded that the security procedures and

-3-

measures implemented by UPS were common to each of the identified UPS facilities. We also concluded that the putative class members had alleged a common wrong and had allegedly suffered the same injury – unpaid work time. Consequently, we rejected the circuit court's conclusion that the putative class failed to meet the commonality prerequisite of class certification.

Furthermore, we concluded that the claims of the putative class representatives and the proposed class members were based upon a substantially similar course of conduct by UPS (mandatory security procedures at the facilities) and upon the same legal theory (violation of the Kentucky Wages and Hours Act). Consequently, we rejected the circuit court's conclusion that the more limited putative class failed to meet the typicality prerequisite for class action certification.

We vacated the circuit court's order denying class certification of the more narrowly defined class and remanded the matter for further proceedings. Upon remand, we instructed the circuit court to determine whether the limited class satisfied the remaining prerequisites for class certification pursuant to two other provisions of CR 23.01 – numerosity and adequacy of representation. We instructed the circuit court to deny class certification if it concluded that the limited class failed to satisfy either the numerosity or adequacy of representation prerequisite. However, if the circuit court determined that the limited class satisfied each additional prerequisite, we instructed it to determine whether the proposed limited class fulfilled any one of three conditions set forth in CR 23.02. If the circuit court determined that the proposed limited class satisfied any one of the three conditions provided by the civil rule, we directed it to certify the proposed class. In its order remanding, the previous panel of this Court held and instructed as follows:

-4-

[W]e hold that the circuit court erred by determining that the limited class did not fulfill the prerequisites of commonality and typicality under CR 23.01(b) and (c). As the circuit court so erred, we vacate the October 9, 2012, opinion and order and remand for the circuit court to determine whether the limited class satisfies the additional prerequisites of CR 23.01(a) and (d). These prerequisites are the numerosity prerequisite of CR 23.01(a) and the adequacy of representation prerequisite of CR 23.01(d). If the circuit court concludes that the limited class fails to satisfy either prerequisite as set forth in CR 23.01(a) or (d), the circuit court shall deny class certification. Conversely, if the circuit court determines that the limited class satisfies both prerequisites of CR 23.01(a) and (d), the circuit court shall then determine if the limited class fulfills any one of the three conditions set forth in CR 23.02. If the circuit court decides that the class fails to satisfy all three conditions of CR 23.02, the class certification shall be denied. However, if the limited class satisfies at least one of the three conditions of CR 23.02, the circuit court shall certify the limited class.

2012-CA-001353-ME, 2013 WL 4779746, at *6 (Ky. App. Sept. 6, 2013).

Upon remand, UPS filed a motion for judgment on the pleadings. UPS contended that the unpaid wages claims of the proposed class members could not be pursued through a class action because the provisions of Kentucky's Wages and Hours law did not permit such actions. In support of its position, UPS relied upon *dicta* included in our unpublished opinion, *Toyota Motor Mfg., Kentucky, Inc., v. Kelley*, 2012-CA-001508-ME, 2013

-5-

WL 6046079 (Ky. App. Nov. 15, 2013). In *Kelley*, we observed that if we were required by the facts of the case to decide whether a class action were available for claims brought under the provisions of KRS 337.385, we would conclude that it was not. We read the text of KRS 337.385(1) as a clear expression of the intent of the General Assembly not to permit class actions by employees against employers for unpaid wages.

Following a hearing conducted on August 15, 2014, the Jefferson Circuit Court denied the motion of UPS for judgment on the pleadings. The circuit court dismissed our *dicta* in *Kelley* as nonbinding. It was not persuaded that the provisions of Kentucky's Wages and Hours Act prohibit employees from pursuing relief by way of a class action. Pursuant to our instructions, the circuit court proceeded to consider whether the proposed limited class satisfied the numerosity and adequacy of representation prerequisites for class certification.

With respect to the numerosity requirement, the circuit court observed that the proposed class numbered more than 11,000 employees working at the identified facilities. The court determined that given this large number of potential plaintiffs, joinder was impracticable. It concluded that the proposed class plainly met the numerosity prerequisite of CR 23.01.

Next, the circuit court considered whether the adequacy of representation requirement was met. The circuit court observed that there did not appear to be a conflict between the interests of the representative parties and the interests of the prospective class. It found that counsel for the putative class was qualified and could be expected to prosecute the interests of the class vigorously. Consequently, it concluded that the adequacy of representation prerequisite of CR 23.01 had been satisfied.

Having determined that the putative class satisfied each of these prerequisites, the circuit court next considered whether the proposed limited class fulfilled any one of three conditions established by the provisions of CR 23.02. The circuit court found that the questions of law or fact common to the members of the proposed class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These findings comported with the requirements of CR 23.02(c). Having determined that the proposed limited class satisfied one of the three conditions provided by CR 23.02, the circuit court certified the putative class on August 15, 2014. UPS then filed this appeal. Hence, the circuit court clearly complied with our directive to it upon remand.

*Hughes*, 2018 WL 3602262, at *1-3.

This Court affirmed class certification. In doing so, we relied upon the law-of-the-case doctrine in rejecting the argument by UPS that, based upon the recent holding of the United States Supreme Court in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 135 S. Ct. 513, 190 L. Ed. 2d 410 (2014), "the representative members of the putative class [had] not suffered a compensable injury. Thus, it argue[d] that the purported class cannot be certified upon the same bases as announced by the circuit court following our remand." *Hughes*, 2018 WL 3602262 at *5. We concluded, "Finally, we note that this case has been making a tortuous journey through the court system for more than eleven years – a shocking

reality in and of itself. It is long overdue that this matter be resolved on its merits at last." *Id.* at *6. This opinion became final on February 6, 2019.

On remand, UPS filed a renewed motion for a partial judgment on the pleadings, arguing that the time for which the Class was seeking compensation – time spent waiting for and undergoing security screenings – was not compensable under Kentucky law. UPS based this argument on the United States Supreme Court's opinion in *Integrity Staffing*, *supra*. The type of wage and hour claim raised here had been deemed not cognizable under the Fair Labor Standards Act ("the FLSA"), 29 United States Code (U.S.C.) § 201 *et seq*., based upon the Portal-to-Portal Act, 29 U.S.C. §251 *et seq*., both in *Integrity Staffing* and *Vance v. Amazon.com, Inc.*, 852 F.3d 601 (6th Cir. 2017). UPS asserted that Kentucky's Wage and Hour law, KRS Chapter 337, and associated regulations incorporate Portal-to-Portal Act principles as that Chapter was meant to be interpreted consistent with federal law.

In its response, the Class objected to the motion, arguing that KRS Chapter 337 does not contain any reference to the FLSA's Portal-to-Portal Act, meaning that Kentucky had not adopted those exceptions. In reply, UPS argued that KRS Chapter 337 and the FLSA should be interpreted consistently and that the Portal-to-Portal Act was meant to clarify that compensable work did not include the time an employee spent walking to and from his workstation or other

preliminary or postliminary activities, citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 447, 136 S. Ct. 1036, 1042, 194 L. Ed. 2d 124 (2016).  The holding in *Integrity Staffing*, UPS argued, controlled in this case.

The court heard oral arguments from the parties in early April, and on April 26, 2019, it entered an order granting the motion by UPS:

> This matter is before the Court upon a Renewed Motion for Partial Judgment on the Pleadings filed by Defendants [UPS].  In their Second Amended Complaint, Plaintiffs allege that, when they arrive at their work facility, they are required to pass through a security checkpoint and are not compensated for the time spent going through security and getting to their work station.  They also allege that, after their shift is over, they are not compensated for the time it takes to get to the exit and pass through a security checkpoint as they leave the facility.  Defendants argue that, pursuant to *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014), this time is noncompensable and they are entitled to a judgment as a matter of law.

> The Kentucky Supreme Court instructs the Courts of the Commonwealth that, "[i]n the absence of any Kentucky cases on point, we next look to federal cases interpreting the FLSA."  *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n ex rel. Kaelin*, 212 S.W.3d 89, 95 (Ky. 2006).  Here, the U.S. Supreme Court has analyzed the very issue that is currently confronting the Court:  whether the time employees spend walking to and from and passing through a security checkpoint at the beginning and end of a shift is compensable.  Although the *Integrity Staffing* decision involved application of the FLSA and Portal-to-Portal Act, the Court turns to that decision for purposes of interpreting Kentucky law because there are no Kentucky cases on point.  *Kaelin*, 212 S.W.3d at 95.

> Although Portal-to-Portal Act language was not included in the 1974 Act adopting the Kentucky analogue to the FLSA, the General Assembly, when adopting the 1974 Act was not acting in a vacuum, as the Portal-to-Portal Act was passed by Congress almost 30 years earlier. Furthermore, the Kentucky Labor Cabinet has issued regulations and interpretations that incorporate Portal-to-Portal Act principles, which are "entitled to substantial deference." *Commonwealth v. Family Home Health Care, Inc.*, 98 S.W.3d 524, 527 (Ky. App. 2003). If the General Assembly had intended to impose liability in circumstances where there would be no liability under the FLSA, the General Assembly would have affirmatively so stated – just as they have done with respect to other components of the state's wage and hour laws.
>
> Even when the Court accepts all of the allegations in the Second Amended Complaint as true, and viewing those allegations in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs' "Unpaid Wages" claim is foreclosed by applicable law. Being sufficiently advised it is ORDERED that Defendants' Motion is GRANTED. Plaintiffs' "Unpaid Wages" claim is DISMISSED WITH PREJUDICE.

The Class moved the court to clarify the April 26, 2019, order to show that it dismissed only a narrow portion of the claim that a jury might find was attributable to travel or, alternatively, to make that order final and appealable. It argued that the circuit court did not address, and UPS did not seek dismissal on, any other regulations supporting its Unpaid Wages claim under other legal theories. In response, UPS contended that the order entirely disposed of the Class's Unpaid Wages claim, meaning that no clarification was necessary. It did

-10-

agree that the court should make the order final and appealable so that it could be immediately appealed. The court scheduled a status conference for September 18, 2019, where it heard arguments from counsel. By order entered that day, it denied the motion to clarify and granted the Class's alternative motion to make the April 19, 2019, order final and appealable. This appeal now follows.

On appeal, the Class continues to argue that the federal Portal-to-Portal Act has not been adopted in Kentucky and therefore cannot support the circuit court's ruling; that, even if it applied, the court's dismissal was in error due to the lack of discovery and the existence of disputed questions of material fact; and that the court erred in preventing the Class from presenting all of its theories of liability to a jury. We find no merit in these arguments.

This appeal arises from the circuit court's dismissal pursuant to CR 12.03, which provides as follows:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on such motion, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.

This Court addressed the use of CR 12.03 in *James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002), explaining:

In the context of a motion to dismiss for failure to state a claim upon which relief can be granted, . . . "[t]he court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." [*Pari-Mutuel Clerks' Union v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977).] In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?

(Footnotes omitted.) *See also City of Pioneer Village v. Bullitt County ex rel. Bullitt Fiscal Court*, 104 S.W.3d 757, 759 (Ky. 2003) ("[CR] 12.03 provides that any party to a lawsuit may move for a judgment on the pleadings. The purpose of the rule is to expedite the termination of a controversy where the ultimate and controlling facts are not in dispute.").

For its first argument, the Class contends that the Portal-to-Portal Act has not been adopted into Kentucky law because that language was not specifically adopted by the General Assembly in KRS Chapter 337. This is a question of statutory interpretation. In *Pearce v. University of Louisville, by and through its Board of Trustees*, 448 S.W.3d 746 (Ky. 2014), the Supreme Court of Kentucky addressed the standard of review of statutory construction:

Statutory construction is an issue of law that we review *de novo*. Therefore, "[t]he trial court's and Court of Appeals's [sic] construction of statutes is also entitled to no deference on appeal . . . ." *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d

644, 647 (Ky. 2007) (citing *Bob Hook Chevrolet Isuzu, Inc. v. Kentucky Transportation Cabinet*, 983 S.W.2d 488, 490 (Ky. 1998)).

> In construing a statute, it is fundamental that our foremost objective is to determine the legislature's intent in enacting the legislation. "To determine legislative intent, we look first to the language of the statute, giving the words their plain and ordinary meaning." *Richardson v. Louisville/Jefferson County Metro Government*, 260 S.W.3d 777, 779 (Ky. 2008). Further, we construe a "statute only as written, and the intent of the Legislature must be deduced from the language it used, when it is plain and unambiguous . . . ." *Western Kentucky Coal Co. v. Nall & Bailey*, 228 Ky. 76, 14 S.W.2d 400, 401-02 (1929). Therefore, when a statute is unambiguous, we need not consider extrinsic evidence of legislative intent and public policy. *County Bd. of Educ. Jefferson County v. Southern Pac. Co.*, 225 Ky. 621, 9 S.W.2d 984, 986 (1928). However, if the statutory language is ambiguous, we will look to other sources to ascertain the legislature's meaning, such as legislative history and public policy considerations. *MPM Financial Group Inc. v. Morton*, 289 S.W.3d 193, 198 (Ky. 2009). Further, we "read the statute as a whole, and with other parts of the law of the Commonwealth, to ensure that our interpretation is logical in context." *Lichtenstein v. Barbanel*, 322 S.W.3d 27, 35 (Ky. 2010).

*Id.* at 749.

In 1947, the federal Portal-to-Portal Act was enacted by Congress as a clarification of the FLSA, which had originally been enacted in 1938. In 29 U.S.C. § 251, Congress included its findings and declared the policy as follows:

> (a) The Congress finds that the Fair Labor Standards Act of 1938, as amended, has been interpreted judicially in disregard of long-established customs, practices, and

-13-

contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of industrial operations, halting of expansion and development, curtailing employment, and the earning power of employees; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created; (7) the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services heretofore and hereafter purchased by its various departments and agencies would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and

-14-

adverse effects upon the revenues of Federal, State, and local governments would occur.

The Congress further finds that all of the foregoing constitutes a substantial burden on commerce and a substantial obstruction to the free flow of goods in commerce.

The Congress, therefore, further finds and declares that it is in the national public interest and for the general welfare, essential to national defense, and necessary to aid, protect, and foster commerce, that this chapter be enacted.

The Congress further finds that the varying and extended periods of time for which, under the laws of the several States, potential retroactive liability may be imposed upon employers, have given and will give rise to great difficulties in the sound and orderly conduct of business and industry.

The Congress further finds and declares that all of the results which have arisen or may arise under the Fair Labor Standards Act of 1938, as amended, as aforesaid, may (except as to liability for liquidated damages) arise with respect to the Walsh-Healey and Bacon-Davis Acts and that it is, therefore, in the national public interest and for the general welfare, essential to national defense, and necessary to aid, protect, and foster commerce, that this chapter shall apply to the Walsh-Healey Act and the Bacon-Davis Act.

(b) It is declared to be the policy of the Congress in order to meet the existing emergency and to correct existing evils (1) to relieve and protect interstate commerce from practices which burden and obstruct it; (2) to protect the right of collective bargaining; and (3) to define and limit the jurisdiction of the courts.

The Portal-to-Portal Act exception to the FLSA at issue in the present case is set forth, in relevant part, in 29 U.S.C. § 254(a):

Activities not compensable

Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947-

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

We agree with UPS that this Court should look to federal law for guidance in this instance as set forth in *Vance*, *supra*.

> In Kentucky, "the cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Beshear v. Haydon Bridge Co., Inc.*, 304 S.W.3d 682, 703 (Ky. 2010) (citation and brackets omitted). "The obvious place to start is with the language of the statute itself." *Members Choice Credit Union v. Home Fed. Savings and Loan Ass'n*, 323 S.W.3d 658, 660 (Ky. 2010). If the Kentucky Act is "similar to a Federal Act," its language "will normally be interpreted consistent with federal law." *Starr v. Louisville Graphite, Inc.*, No. 2014-CA-000620-MR, 2016 WL 1612940, \*3 (Ky. Ct. App. Apr. 22, 2016); *see also Ammerman v. Bd. of Educ. of Nicholas Cty.*, 30 S.W.3d 793, 797-98 (Ky. 2000) (holding the Kentucky Civil Rights Act "should be interpreted consistently with" Title VII).

> Plaintiffs agree the KWHA is similar to its federal counterpart – so much so that the Kentucky Supreme Court considers it "Kentucky's analogue to the Fair Labor Standards Act." *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n*, 212 S.W.3d 89, 92 (Ky. 2006). Both statutes require employers to compensate employees "at a rate not less than one and one-half times the regular rate" for a "workweek longer than forty hours." *Compare* 29 U.S.C. § 207(a)(1), *with* Ky. Rev. Stat. § 337.285(1) (using nearly identical language). Both also define "hours worked," and the related concepts of "suffered or permitted to work," "waiting time," "on-call time," "rest and meal periods," and "travel time" in comparable language. *Compare* 803 Ky. Admin. Regs. 1:065(1)-(7), *with* 29 C.F.R. §§ 785.11-.19, 785.33, 785.35, and 785.38. Hence, when the dispute concerns one of these "substantially similar" provisions, and state case law is lacking, the Kentucky

-17-

Supreme Court looks to federal precedent for interpretive guidance. *City of Louisville*, 212 S.W.3d at 95.

*Vance*, 852 F.3d at 610.

Turning to the Class's primary argument that the § 254(a) exception is inapplicable in Kentucky because the General Assembly did not expressly adopt its terms, we also agree with UPS that this argument has no merit. The *Vance* Court explained the history of the enactment of both the FLSA and the Portal-to-Portal Act, and it specifically focused on the security screening issue:

> "Enacted in 1938, the FLSA established a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek." *Integrity Staffing*, 135 S.Ct. at 516. "The Act did not, however, define the key terms 'work' and 'workweek.'" *Sandifer v. U.S. Steel Corp.*, ___ U.S. ___, 134 S. Ct. 870, 875, 187 L. Ed. 2d 729 (2014). Absent congressional guidance, the Supreme Court interpreted these terms broadly. *Integrity Staffing*, 135 S. Ct. at 516. "It defined 'work' as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Id*. (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S. Ct. 698, 88 L. Ed. 949 (1944)). Only months after *Tennessee Coal*, the Court expanded the definition further, "clarif[ying] that 'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA," for "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." [*IBP, Inc. v. Alvarez*, 546 U.S. 21, 25, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005)] (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S. Ct. 165, 89 L. Ed. 118 (1944)). "Readiness to serve may be hired, quite as much as

service itself," and must therefore also be compensated. *Armour*, 323 U.S. at 133, 65 S. Ct. 165.

The Court took a similar approach with "the statutory workweek," which "include[d] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946). "That period, *Anderson* explained, encompassed time spent 'pursuing certain preliminary activities after arriving, such as putting on aprons and overalls and removing shirts.'" *Sandifer*, 134 S. Ct. at 875 (quoting *Anderson*, 328 U.S. at 692-93, 66 S. Ct. 1187) (ellipsis and brackets omitted). Per *Anderson*, these preparatory efforts "'are clearly work' under the Act." *Id.* (quoting *Anderson*, 328 U.S. at 693, 66 S. Ct. 1187).

Together, these holdings led to decisions requiring compensation for nearly every minute an employer required its employees to be on the employer's premises, including "the time spent traveling between mine portals and underground work areas," and "walking from timeclocks to work benches." *Integrity Staffing*, 135 S. Ct. at 516 (citing *Tenn. Coal*, 321 U.S. at 598, 64 S. Ct. 698, and *Anderson*, 328 U.S. at 691-92, 66 S. Ct. 1187). They also "provoked a flood of litigation," including 1,500 FLSA actions filed within six months of the Court's ruling in *Anderson*. *Id.*

"Congress responded swiftly." *Id.* Finding the Court's decisions had "creat[ed] wholly unexpected liabilities" with the capacity to "bring about financial ruin of many employers," it enacted the Portal-to-Portal Act of 1947. *Id.* at 516-17 (quoting 29 U.S.C. § 251(a)-(b)). The Act excepted two activities the Court previously deemed compensable: "walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are 'preliminary or postliminary' to

that principal activity." *IBP*, 546 U.S. at 27, 126 S. Ct. 514; *see also Integrity Staffing*, 135 S. Ct. at 516-17 (detailing history). Under the Portal-to-Portal Act then, an employee's principal activities are compensable, while conduct he engages in before and after those activities (i.e., preliminary and postliminary acts) is not.

"[P]rincipal activity" refers to the activity "an employee is employed to perform." *Integrity Staffing*, 135 S .Ct. at 517, 519. "[T]he term principal activity . . . embraces all activities which are an integral and indispensable part of the principal activities." *IBP*, 546 U.S. at 29-30, 126 S. Ct. 514 (internal quotation marks and citation omitted). An activity is "integral and indispensable" to the principal activities an individual is employed to perform "if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing*, 135 S. Ct. at 517. In other words, an activity is integral and indispensable to the work an employee was hired to do if it is a component of that work, and he cannot complete the work without it. *Id.*

Applying these terms, the *Integrity Staffing* Court held that post-shift security screenings were neither the principal activity Amazon hired its employees to perform, nor "integral and indispensable" to that activity:

> To begin with, the screenings were not the "principal activity or activities which [the] employee is employed to perform." Integrity Staffing did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers.
>
> The security screenings also were not "integral and indispensable" to the employees' duties as warehouse

-20-

workers . . . . The screenings were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment. And Integrity Staffing could have eliminated the screenings altogether without impairing the employees' ability to complete their work.

*Id*. at 518 (citation omitted). The screenings were therefore "postliminary" to the employees' principal activities and excluded from compensation pursuant to the Portal-to-Portal Act.

Defendants contend the KWHA implicitly incorporates the Portal-to-Portal Act's exclusions, making *Integrity Staffing* strongly persuasive in resolving plaintiffs' state-law claims. The Vances counter that the KWHA does not include "preliminary" or "postliminary" language, and, as a result, its application should not turn on Portal-to-Portal Act cases like *Integrity Staffing*.

*Vance*, 852 F.3d at 608-10.

The *Vance* Court went on to examine whether by omitting the Portal-to-Portal Act language, Kentucky's General Assembly was signaling a deviation from that Act. It held that it did not:

To be sure, Kentucky courts are bound by "the words [the General Assembly] used in enacting the statute"; they are not free to "surmis[e] what may have been intended but was not expressed." *Travelers Indem. Co. v. Reker*, 100 S.W.3d 756, 765 (Ky. 2003) (citation omitted). "Admittedly," then, "when a legislature's enactment departs from the language of a model act, it usually does so to express an intention different from the model act." [*Members Choice Credit Union v. Home Fed. Savings and Loan Ass'n*, 323 S.W.3d 658, 663 (Ky. 2010)] (internal quotation marks and citation omitted).

-21-

"But," Kentucky's Supreme Court has cautioned that "this approach is primarily relevant when the legislature is working in a vacuum, building first principles in an area of the law." *Id*. Here, the Kentucky General Assembly was not "working in a vacuum, building first principles of [wage and hour] law." *Id*. It drafted the KWHA in 1974, decades after Congress enacted the 1947 Portal-to-Portal Act. "Where such context exists, it does not automatically follow that the legislature meant anything by a departure from the model act." *Id*. (recognizing that at the time of the amendment at issue, "credit unions were already regulated . . . in Kentucky and had been so for over sixty years"). Rather, "absent a clear indication that the General Assembly considered the revision and deliberately rejected it . . . legislative inaction is a weak reed upon which to lean, and a poor beacon to follow in construing a statute" that borrows some, but not all, of a model act's provisions. *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 560 (Ky. 2011) (citation, brackets, and ellipsis omitted).

Model-act-based statutes are better interpreted "with reference to the circumstances existing at the time of passage." *Members Choice Credit Union*, 323 S.W.3d at 663 (quoting *United States v. Wise*, 370 U.S. 405, 411, 82 S. Ct. 1354, 8 L. Ed. 2d 590 (1962)). These circumstances may include an awareness of the conditions that precipitated the Portal-to-Portal Act – particularly the "flood of litigation" provoked by the Supreme Court's early permissive rulings. *Integrity Staffing*, 135 S. Ct. at 516. "Further, our rules of statutory construction presume that the legislature is aware of the state of the law at the time it enacts a statute, concluding judicial construction of prior enactments." *St. Clair v. Commonwealth*, 140 S.W.3d 510, 570 (Ky. 2004). If the Kentucky General Assembly intended to expose employers to the type of liability Congress foreclosed in the Portal-to-Portal Act, one may reasonably assume it would have done so affirmatively – especially given its willingness to affirmatively depart

from the FLSA in other instances. *See*, *e.g.*, *City of Louisville*, 212 S.W.3d at 95 [*City of Louisville, Div. of Fire v. Fire Service Managers Ass'n ex rel. Kaelin*, 212 S.W.3d 89 (Ky. 2006)]; *compare also* Ky. Rev. Stat. § 337.065(3) (prohibiting mandatory tip-pooling), *with* 29 U.S.C. § 203(m) (specifying that it does not prohibit tip-pooling); *and* Ky. Rev. Stat. § 337.050(1) (requiring overtime pay for hours worked on the seventh consecutive day of the work week), *with* 29 U.S.C. § 207 (including no such requirement). Thus, "absent a clear indication that the General Assembly considered the revision and deliberately rejected it," *Shawnee Telecom*, 354 S.W.3d at 560, we cannot conclude that the lack of Portal-to-Portal Act language demonstrates legislative intent to exclude its compensation limits from Kentucky's wage and hour laws.

*Id.* at 611-13 (footnote omitted). The Court also considered Kentucky's administrative regulations in supporting its conclusion that the General Assembly did not intend to reject the exclusion set forth in the Portal-to-Portal Act.

We have considered the parties' arguments and caselaw cited in their respective briefs. Based upon our review, we agree with the interpretation of Kentucky's Wage and Hours laws as set forth in *Vance* and hold that the circuit court properly ruled that security screenings at issue constituted preliminary and postliminary activities that were not part of the workers' principal activity in their work for UPS and therefore were not compensable. Therefore, the Class's Unpaid Wages claim could not be maintained and was properly dismissed.

Next, the Class argues that, even if the Portal-to-Portal Act exception were to be read into KRS Chapter 337, the circuit court still erred in dismissing the

-23-

Unpaid Wages class claim due to lack of discovery and the existence of disputed material facts.  In its brief, the Class listed questions of material fact as including whether UPS' mandatory security locations were job sites, whether the Class members were required to report to the mandatory security locations for instructions, whether the Class members performed work by participating in security procedures, whether the security procedures were a principal duty, whether the security procedures were for UPS' benefits, and whether the security procedures could be eliminated.

In response, UPS cites to *City of Pioneer Village*, 104 S.W.3d at 759, in which the Supreme Court of Kentucky explained the purpose of a CR 12.03 motion for a judgment on the pleadings:

> The purpose of the rule is to expedite the termination of a controversy where the ultimate and controlling facts are not in dispute.  It is designed to provide a method of disposing of cases where the allegations of the pleadings are admitted and only a question of law is to be decided. The procedure is not intended to delay the trial in any respect, but is to be determined before the trial begins. The basis of the motion is to test the legal sufficiency of a claim or defense in view of all the adverse pleadings. When a party moves for a judgment on the pleadings, he admits for the purposes of his motion not only the truth of all his adversary's well-pleaded allegations of fact and fair inferences therefrom, but also the untruth of all his own allegations which have been denied by his adversary. *Archer v. Citizens Fidelity Bank & Trust Co.*, Ky., 365 S.W.2d 727 (1963).  The judgment should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle

him/her to relief. *Cf. Spencer v. Woods*, Ky., 282 S.W.2d 851 (1955).

UPS argues that dismissal was still warranted because the time for which the Class was seeking compensation remained noncompensable as a matter of law. We agree and find no merit in the Class's argument to the contrary.

Finally, the Class argues that the circuit court's ruling prevented it from presenting all of its liability theories to the jury, stating that the jury could have found that the time was compensable under such a theory as "waiting time." UPS responds that the Class did not attempt to establish a set of facts to show that the Class members were "engaged to" pass through security checkpoints or that undergoing these security screenings constituted an integral part of their job. Again, we find no merit in the Class's argument.

For the foregoing reasons, the order dismissing the Unpaid Wages class claim is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Andrew J. Horne
Louisville, Kentucky

Michael D. Grabhorn
Andrew M. Grabhorn
Louisville, Kentucky

BRIEF FOR APPELLEES UPS
SUPPLY CHAIN SOLUTIONS, INC.,
AND UNITED PARCEL SERVICE,
INC.:

C. Laurence Woods III
Kyle D. Johnson
Louisville, Kentucky

Joseph R. Palmore, *pro hac vice*
Samuel B. Goldstein, *pro hac vice*
Washington, D.C.